PLANTERS' INSURANCE COMPANY *v.* B. D. COMFORT.

1. INSURANCE — MUTUAL PLAN. — Among the features distinguishing such companies from those who insure upon a capital paid up or secured are, that each insurer becomes a member of the association. The capital is composed of premiums earned in the business and deposit notes. The deposit notes constitute the reserved fund, to be used as the necessities of expenses and losses require. The insurers become the mutual indemnifiers of each other against damage and loss from the elements insured against.

2. SAME — SAME — MODE OF OBTAINING CONTRIBUTIONS. — The mode of obtaining contributions from the makers of deposit notes, is to assess each liable for the loss and expenses with a *pro rata* assessment of a just proportion, and require its payment on due notice. This amount is determined by the directory and must be assessed ratably on the deposit notes of those whose policies were in existence at the date of the loss. Responsibility to contribute to a loss begins when the insurance has been effected, and terminates when the policy expires.

3. SAME — SAME — DUTY OF THE COMPANY. — It is the duty of the company to show before making the assessment, that the loss occurred during the terms of the policies of those assessed, and that all the members under a duty to contribute were assessed; and the company should collect by suit, if necessary, the amount due by delinquents on assessments.

4. SAME — SAME — FORFEITURE OF POLICY. — When an assessment is not made in accordance with the charter upon a deposit note, the failure to pay such an assessment does not work a forfeiture of the policy under the charter.

5. SAME — PROOF OF LOSS — CASE IN JUDGMENT. — The policy requires all insured to make out within thirty days a statement under oath, etc., of the loss. This is a condition precedent to the right of the assured to recover. C., within the required time, notified the company of his loss. The company replied to this, repudiating all liability on the ground of nonpayment of assessment. *Held*, that such an act was a waiver by the company of any further proof of loss by C.

ERROR to the Circuit Court of Hinds County. Hon. GEORGE F. BROWN, Judge.

The facts of case appear sufficiently in the opinion of the court.

*T. J. & F. A. R. Wharton*, for plaintiffs in error, argued the case orally, and insisted:

I. That the circuit court erred in overruling the demurer to the 2d count of the declaration. As this count virtually incorporated in it the policy of insurance, it should have been sustained, if for no other reasons than because it did not contain any allegation sufficient to show that the payment of the assessment money had been prevented by some act of the defendants; nor any reason why this could not have been paid after the first week in January, 1871, and previous to the burning of the building, on the 9th day of June, 1871.

II. The circuit court erred in admitting as evidence, the exparte affidavit of the plaintiff, and the certificate of the clerk of the circuit court of Attala county. These were only intended, between the parties of this suit, as preliminary proofs of loss. These were only intended as information to the insurance company, and to enable it to determine whether they would pay for the loss of the building. Flanders on Fire Ins., pp. 527, 528, sec. 6.

III. The judgment of the circuit court was erroneous, because the plaintiff failed to establish by legal evidence, either of the following essential allegations of his declaration:

1st. That the building was destroyed by fire, *and not by means of any of the excepted causes contained in his policy of insurance.* 2d. That it was so destroyed *during the continuance of his policy of insurance*, and without default on his part.

Besides the preliminary proofs, before referred to, and the testimony of the plaintiff upon information from others, there was no evidence whatever, either that the building had been burned, or that the loss of the building did not result from any of the excepted causes contained in the policy of insurance. In such condition of the case, the plaintiff was not entitled to recover for the loss of the building, even if he had proved the actual payment of the assessment of $36. This position is too fully sustained by

every rule of pleadings to require any citation of authorities to support it.

The attempt to establish by evidence, the burning of the building during the continuance of the policy of insurance, either by proof of a legal tender of the assessment, or by proof to excuse such tender, utterly failed. No reliance was based upon an offer to pay this to E. M. Wells, and the proof showed he was not authorized to receive it. The plaintiff did not attempt to prove any tender of this by J. C. Lucas, his agent; he only attempted to prove that Lucas could not make such tender at the office in the city of Jackson, because there was no agent in said office on the 2d, 3d or 4th of January, 1871. This was contradicted by T. E. Helm and M. A. Van Hook, officers of the insurance company. Lucas testified that he went to this office on the day before the legislature met in January, 1871, or on the day it met, and again on the next day, to pay the money, and that he did not make any subsequent effort to pay it. The journals of that legislature show that it assembled on Tuesday, the 3d day of January, 1871; so that he made no attempt to pay this money after the 4th day of January, 1871, which was eleven days previous to the time allowed in the notice of the assessment for the payment of this money, and more than five months before the building was burned. And yet the plaintiff was allowed, under his policy of insurance, to protect himself against this loss *by the payment of this assessment at any time previous to the burning of his building.*

Under the special conditions of the policy of insurance, the stipulations contained in the application for its issuance, and the 16th section of the charter of this insurance company, this policy became void on the 15th day of January, 1871, because of the default of payment of the assessment of $36.

The defendant in errror, in accepting this policy of insurance, became a member of this insurance company during the continuance of his policy, and was bound by the provisions of the act incorporating it, and by its by-laws. See sec. 6 of the charter of incorporations; also Flanders on Fire Ins., p. 522, sec. 12.

The stipulation in the application for this policy of insurance, and in the policy itself, to the effect that the policy should be void on failure to pay any assessment for losses, etc., constitutes a warranty on the part of the defendant in error, and estops him from setting up any matter to excuse a default in the payment of such assessment, except some positive act on the part of the insurance company which made it impossible for him to pay it at any time previous to the burning of his building. See Flanders on Fire Ins., pp. 204–205, sec. 2; also pages 207 and 210.

This rule should be rigidly enforced in this case for the following reasons: 1st. Because, as before shown, the defendant in error could, by a payment of this assessment at any time previous to the burning of the building, have caused this policy of insurance to stand again as a security against such loss. 2d. Because the defendant in error elected his own agent for the payment of this assessment money, instead of sending it by express, as he was positively required to do in the notice of such assessment. 3d. Because of the condition in the policy of insurance which declared it should be void upon any failure of the assured to comply with its conditions. Flanders on Fire Ins., p. 132, sec. 3. 4th. Because under the 1st and 22d sections of the charter of the insurance company, the provisions of said charter are required to be construed liberally in favor of the company.

There is no such conflict between sections 15 and 16 of the charter of this insurance company as was contended for in the circuit court by counsel for the defendant in error. If construed according to the rule established by this court, to the effect that statutes must be construed so as to give effect to all of their provisions, wherever this can be done, there is no conflict whatever between these sections.

Under the 15th section, the insurance company is authorized, on default of payment of any assessment, to sue for and recover the whole of the deposit note of the assured, and the money so collected "shall remain in the treasury of the company, subject

to the payment of such loss or losses and expenses as have or may thereafter accrue."

In addition to this right, and as a cumulative remedy or means to enable the insurance company to keep itself at all times in condition to comply with all of its legal obligations, the 16th section not only excludes and debars the assured, upon failure to make such payment of assessments, of "all benefit and advantage of his, her or their policy of insurance respectively, for and during the term of such default or nonpayment," but provides, also, that the assured "*shall be liable to pay all assessments that shall be made during the continuance of said policies of insurance.*"

But if mistaken as to this being the proper construction to be given to these sections, we then submit that the only other reasonable construction which the language used will justify, is this: that the legislature intended to allow the insurance company to elect, upon such default of payment, to sue for and collect the whole of the deposit note, as provided for in the 15th section, or, under the 16th section, to avoid all liability on the policy, upon proof of such default of payment.

As no attempt was made in the pleadings to avoid the liability of the defendant in error for the payment of the assessment of $36.00 on account of losses which accrued under policies of insurance issued previous to the one sued on in this case, that question cannot be adjudicated on this record.

IV. We submit that the judgment of the circuit court was wholly unsupported by *competent* evidence in the cause, and should be reversed. It certainly was against "the strong preponderance" of the evidence, and "clearly wrong." Brown v. Forbes, 8 S. & M. Rep., 498, on p. 504; McAlexander v. Puryear, 48 Miss. Rep., 420, on 422.

*Harris & George*, for defendant in error:

I. Reviewed the facts of the case at length and also the charter of the company, and with reference to the latter they insisted that the company was purely a mutual one, and that the company had

no power to make assessments on the deposit notes, except on these conditions:    1. That there was not money enough in the treasury of the company to pay losses. 2. That each policy holder was only liable for losses occurring whilst he was a member of the company.    3. And that in making the assessments the company was bound to assess all the solvent members, and they were also bound to collect from solvent defaulters, on a prior assessment what was due by them.

They insisted that the assessments were not made in accordance with these conditions.

To show that the company was mutual, notwithstanding the power to receive all cash from any particular insurer, they cited Union Ins. Co. v. Hoge, 21 How. S. C., 35 ; Ohio Mut. Ins. Co. v. Marietta Woolen Factory, 3 Ohio (N. S.), 348 ; Flanders on Ins., 137–8.

The company must show affirmatively that the assessments were legal.    Atlantic Mutual Ins. Co. v. Fitzpatrick, 2 Gray, 279; Flanders on Ins., 136 ; Pacific Mut. Ins. Co. v. Guse, 49 Mo., 329 ; Long Pond Ins. Co. v. Houghton, 6 Gray, 77 ; Thomas v. Whallon, 31 Barb., 172 ; In re Bangs, 15 ib., 264 ; Am. Ins. Co. v. Schmidt, 19 Iowa, 502 ; Savage v. Medbury, 19 N. Y., 32 ; Bangs v. ——, 18 ib., 592 ; Herkimer County Mut. Ins. Co. v. Fuller, 14 Barb., 373 ; Devendorf v. Beardsly, 23 ib., 656 ; Appleton Mut. Ins. Co. v. Jesser, 5 Allen, 446.

That each member is only liable for losses occurring whilst he was a policy holder, and that it is the duty of the company to show that the assessment was made to pay such loss, see Wilson v. Ins. Co., 19 Penn., 372 ; Savage v. Medbury, 19 N. Y., 36 ; 23 Barb., 656.

That it is fatal to the assessment that certain members were omitted.    Marblehead Ins. Co. v. Hayward, 3 Gray, 209.    The deposit notes of the defaulter should have been collected.    Bangs v. Gray, 15 Barb., 264 ; S. C. 12 N. Y., 485.

II. The tender to Wells, the agent, and the offer by Lucas to

pay in the office of the company, were sufficient. No officer was present to receive the money. It was the duty of the company to have an officer present. It was their failure, not Comfort's, that caused non-payment. In such a case they cannot insist on a forfeiture. 2 Cruise Dig., p. 33; 2 Robinson's Pr., 71; 2 Bac. Abr. tit. Conditions (O.), sec. 2, paragraph 2, p. 312; ib., 315; Williams v. Bank of U. S., 2 Peters, 102; Marshall v. Craig, 1 Bibb. (on page 390); Majors v. Hickman, 2 Bibb., 218.; ib., 431.

SIMRALL, J., delivered the opinion of the court.

This suit was brought by D. B. Comfort, against the Planter's Insurance Company (a corporation created by the laws of this state), on a policy of insurance, to recover $3,000, the amount of the risk taken by defendant on plaintiff's dwelling house, against damage and loss by fire. The house was destroyed by fire during the term of the policy. It was not controverted that the assured was owner of the property, nor that it was of equal or greater value than the sum named in the policy.

But the defense is rested mainly on two grounds. First, that the assured was in default at the time the loss occurred, in the payment of $36, which had been assessed by the company on his deposit note of $180; and that the effect of such default by the underwriter's charter of incorporation and covenant in the policy was to make invalid and of no effect, the policy, so long as the assured suffered the assessment to remain unpaid.

The Planters' Insurance Company was organized on the mutual plan, which has certain characteristics common to all companies doing an insurance business on that theory. Among the features which distinguish such a company from those who insure upon a capital paid up or secured, are these: Each person who insures his property becomes a member of the association. The capital is made up of premiums, earnings in the business, and deposit notes. The deposit notes constitute, as it were, a reserved fund to be called in as the necessities of expenses and losses require.

The insured become the mutual indemnifiers of each other, against damage and loss from the elements insured against. The funds out of which damages and losses are to be paid are the premiums, the earnings and deposit notes. The mode of obtaining contributions from the makers of deposit notes is to assess upon each, liable for the losses and expenses of the company, a pro rata assessment of a just proportion, and require its payment on due notice.

An examination of the charter of the company, session acts 601 to 609, will discover that its scheme of insurance contained all of these features. "Deposit notes may be received from the insured, which notes shall be paid at such times and in such sums as the directors may from time to time require, for the payment of losses or expenses. The directors or executive committee shall fix the amount each person shall pay at the time of making application for insurance." Sec. 6.

Every person who shall become insured, also his heirs, executors and assigns, continuing to be insured therein, shall be deemed and taken to be members thereof, during the time specified in their policies, *and no longer.* Sec. 7.

The members shall be bound to pay their proportion of all *losses, during the time* for which they were insured to amount of their notes. Sec. 8. In case there shall not be sufficient money in the treasury to pay any loss, the directors may settle and determine the sums to be paid by the several members thereof, as their respective portions of such loss, according to the amount of their several deposit notes, notice of which shall be sent. The amounts thus assessed shall be paid into the treasury within thirty days after notice sent. Sec. 15.

A refusal to pay an assessment for thirty days, which has been duly ordered, shall cause a loss of all benefit or advantage of the insurance, for and during the term of such default. Sec. 16.

The cash premiums and deposit notes shall constitute the capital stock. But a guarantied capital not exceeding $500,000 may be added. Sec. 18.

Every person who effects an insurance becomes a member of the company, and is bound to pay his proportion of losses happening during the time he was insured. The amount thus to be paid is settled by an assessment on the deposit notes. For a refusal promptly to respond to this assessment duly made after notice, the policy is suspended and becomes of no effect, so long as the particular member is in default.

The defendant, through Van Hook, its chief officer, based its refusal to pay Comfort the amount of the risk it had taken on his dwelling house, upon the ground that at the time the house was consumed by fire, Comfort was recusant, in paying the assessment of $36, his due proportion of his deposit note, and that under the sixteenth section of its charter, the policy was suspended and inoperative.

The plaintiff attempted to obviate that defense in two modes : First. That the assessment was illegal, and, therefore, he was under no obligation to pay it. Second. That he made a tender of the money, or made reasonable efforts to pay at the defendant's chief office of business.

The engagement of the members (all the insured are members) to and with each other is, that they will make good to one another all damages and losses, arising from the element insured against. That is the obligation of the insured with each other, contemporaneously holding policies. But this mutual obligation is worked out by the company in the mode prescribed in the fifteenth and sixteenth sections, viz.: When a loss happens, if there be no money in the treasury, then the assessment shall be made and collected.

The deposit notes are made by the charter, of the nature of a reserved fund, to meet expenses and losses, whenever there is not money enough in the treasury, derived from premiums, which are primarily devoted to those purposes. The members of the company are perpetually changing, by the expiration of policies and new insurances. When the contingency arises to make and collect

an assessment, it must be settled on these principles : First. The directors are to determine the amount to be called in. Second. That sum must be apportioned, ratably, upon the deposit notes of all the insured, whose policies were in existence, unexpired, at the date of the loss. The person who effects an insurance to-day is not liable for a loss which occurred yesterday. Responsibility to contribute to a loss begins when the insurance has been effected, and terminates when the policy expires. It would follow, therefore, that whatever would dissolve the connection of the insured with the company, would absolve him from all assessments, except such as had been previously made. Such would be the effect of the surrender and cancellation of a policy. When the policy, with the consent of the underwriter, is given up and cancelled, the deposit note goes with it. Both are constituent parts of one transaction. Flanders Fire In., 23.

The officers of the company have, at all times, information from their papers and records, of the data necessary to be considered in making the assessment. They have information of the times and amount of losses ; of who are insured at such dates, and of the deposit notes. They can readily make proper apportionments. It would rest upon the underwriters properly to show that the assessment was one to which the assured is bound to contribute. Atlantic Ins. Co. v. Fitzpatrick, 2 Gray, 297. Since the insured is only liable for his proportional part, in common with others, for a loss which happened while his policy continued, and is not responsible for losses which accrued before he became a member, or after his policy expired, it would seem to be a logical consequence that the underwriter must show a state of facts which authorizes the assessment to be made. One of those facts is, that the loss took place during the term of his policy. Insurance Company v. Harvey, 45 N. H., 298 ; Long Pond Ins. Company v. Houghton, 6 Gray, 77–82. Another fact to be shown is, that all the members under a duty to contribute were assessed. This is necessary, in order that the burden, which is common to all,

shall be equitably and equally distributed.   Herkimer Company
v. Fuller, 14 Barb., 375 ; Bangs v. Gray, ib., 272 ; Ohio Com-
pany v. Marialla, 3 Ohio St., 350 ; Insurance Company v. Har-
vey, 45 N. H., 298 ; Hart v. Achilles, 28 Barb., 576 ; Dana v.
Munro, 38 ib., 528.

Van Hook, the secretary of the defendant, explained the cir-
cumstances connected with the assessments.   First, a resolution
of the directory, of 2d August, 1870, to the effect that each de-
posit note given after the 1st April, 1869, (and not heretofore as-
sessed), be assessed 20 per cent., to meet losses and expenses in-
curred, etc.   On the 7th Dec., 1870, another resolution was passed,
making a further assessment of 20 per cent. on all the deposit
notes held by the company, payable within 30 days after the 15th
December.   Notice was given to Comfort of his assessment, which
expired on the 15th January, 1871.   The assessment had been
made *to meet losses which had occurred*.   The assessments were made
on all the mutual policies   *   *   without reference to the dates
of the losses.   More than half the members refused to pay the
first assessment ; no compulsory efforts by suits were made to
compel payments.   The second assessment was made with a view
of raising the funds needed from the policy holders, other than
those who were delinquent on the first assessment.   The witness
also said that the second assessment was made on all the deposit
notes held by the company.

The 16th section of the defendant's charter (already referred to)
by way of penalty upon the member who refuses to pay promptly
his assessment, " excludes and debars him of all benefit and ad-
vantage of his insurance during the term of such default ; but,
nevertheless, he shall continue liable to contribute to losses until
his policy expires by limitation."   In addition, by the terms of
the preceding section, upon failure to pay the assessment, the
company may sue for and collect the whole amount of the deposit
note, and the money shall be subject to the payment of losses
and expenses which have or may thereafter accrue.   Where such

serious consequences are visited upon the insured for a failure to perform his part of the contract, the underwriter ought to be held to a fair and substantial compliance on his part.

Comfort, as already observed, was under an obligation if the necessity arose, to pay his proper proportion to the funds of the company. The rule by which his share of the contribution is to be ascertained is distinctly pointed out in the charter. First, the gross sum, the aggregate of losses, or of losses and expenses accrued since each became a member by insurance of his property. That sum is distributed ratably among all mutual policy holders, who were such during the time the losses and expenses accrued. If, therefore, the company sustained a loss before Comfort became a member, he cannot be assessed for it, but the money must be raised from those who were at that time insured. Each insured may be made answerable to the full amount of his deposit note, for losses happening during the term of his policy, but for no other.

It appears that both assessments of August and December were made to cover losses and expenses that had been sustained as well before, as during the term of Comfort's policy. If for prior losses, he is in nowise liable for them. It is incumbent on the defendant, in order to sustain this branch of its defense, to show a proper assessment, authorized by its contract with Comfort, and its charter and by-laws. The terms of the deposit note did not bind Comfort to pay the $180, the sum named in it, absolutely. The words are, "in such portions and at such times as the directors of said company may, agreeably to their their charter and by-laws, require to pay the expenses and losses." The charter and the by-laws made in agreement with it, are the criterion to determine the validity of a particular asssessment.

In order then that the defendant may claim the benefit of the forfeiture denounced by the charter, and repeated in the policy, it must show that losses had accrued for which Comfort was liable. That proof was not definitely made by the defendant.

43

But the charter plainly intends, and it is so expressed, that those who share the burden must equally (proportioned to their insurance and deposit notes) contribute to it. But it was proved that not half of the members paid the first assessment. (Comfort, however, paid his.) That made the second assessment larger than would have been necessary, and increased the amount demanded from those who were prompt. We do not mean that if the apportionment is not made with strict accuracy, it will be vitiated. But the charter requires that the rule of equality must be substantially observed. We do not doubt that insolvent makers of these notes may be altogether rejected from the computation, and the assessment be made with reference to those that are solvent.

But great injustice is done to those who pay punctually, if the company does not avail itself of the means it has of compulsory payments. The charter gives the company the extraordinary security of a lien on the buildings insured and premises, for the deposit notes. It is highly probable that the failure to collect from the delinquents under the first assessment, increased the last assessment upon all who had paid five per cent. Upon refusal to pay within thirty days the first assessment, the company could have recovered the entire amount of the deposit notes from delinquents, and would have had the right to appropriate out of that fund to liquidate future assessments as to such parties.

It was plainly the duty of the company to have enforced collections from these delinquents by suits, if necessary. If that be not done, it becomes impossible to equally apportion losses and expenses among the members. We are of opinion, therefore, that it was not shown in evidence that the assessment in December upon Comfort was imposed according to the charter of the defendant. The company had no right to demand its payment, and it does not have the effect upon his policy of insurance denounced by the 16th section of the chapter.

If the assessment was improperly made, and could not be col-

lected by suit, manifestly, it ought not to have the effect of suspending and annulling the policy, so long as the default continued.

It was argued for the plaintiff in error, though not much pressed, that Comfort did not supply the requisite proof of loss, and that it was error to have admitted in evidence on the trial the preliminary proofs of loss, being his own affidavit and the certificate of Webb, the clerk.   One of the covenants in the policy is, that the insured shall, within thirty days, make out a full statement of his loss, and procure the certificate of a notary public or clerk of a court of record, reciting certain matters pointed out in the policy.   These papers were competent evidence of a compliance by the assured with his covenant. Although they are meant for the information of the underwriter, to enable the company to make full investigation as to the cause and amount of the loss, so as to determine whether it will adjust it or not; yet it is also a condition precedent to the right of the assured to recover.   Flanders Fire Ins., pp. 527, 528.   And competent evidence of a compliance with the policy.   Ib.   But are not evidence of the quality and quantity of the goods or property lost.   In response to Comfort's letter, notifying the company of the loss, the secretary promptly replied repudiating liability of the company on the ground of nonpayment of the assessment.   That relieved the assured of the duty of presenting preliminary proofs.   They could be of no value to the underwriters, and such act is accepted as a waiver of them.   Post v. Ætna Ins. Co., 43 Barb., 351 ; Clark v. Ins. Co., 6 Cush., 342.

But the plaintiff in his testimony stated that his house was burned the 9th of June, 1871, and that it was of the value of $5,000, and the day after the fire he sent the preliminary proofs to the secretary.   Mr. Van Hook promptly replied, expressing sympathy for the loss, but refusing to entertain the question of adjustment for the reason already stated.

The building in the application for the insurance was valued at

$5,000. Lucas, in his testimony, mentions incidentally that the plaintiff's house was burned. It is manifest from the record that the defendant did not by testimony controvert in the circuit court that the building was consumed by fire, and was of greater value than the risk assumed. The defense was placed in that court upon the position originally taken by Van Hook. If the proof on these points was not as full as it might have been, it was because the real controversy was over the position originally taken by the defendant.

In view of the result reached on the first question, it is unnecessary to consider the other points made by the defendant, viz: The decision of the circuit court overruling the demurrer to the first count of the declaration, and whether a tender was actually made of the $36 to Webb, agent, and if made, whether it would have availed the plaintiff, and also whether the efforts to pay that sum at the principal office in Jackson had the effect of relieving the plaintiff from a suspension or temporary annulment of the paying, the defendant had the benefit of these matters on the trial. The testimony was admissible under the second, as well as under the first count. The only difference between the counts was, that the first averred a tender of the $36 to Webb, the agent, and also the effort to pay it at the principal office. No prejudice has inured to the defendant by reason thereof.

We think there is no error in the judgment.

It is therefore affirmed.

TARBELL, C. J., in consequence of absence from Jackson, took no part in the consideration of this case.

NOTE. — The foregoing opinion has reference solely to policies issued under the mutual plan. By reference to the 6th section of the charter, it will be seen that " any person applying for insurance so electing, may pay a definite sum of money for such insurance, and is under no further liability."