CRAIG, Respondent, v. WESTERN LIFE INSURANCE COMPANY, Appellant.

**St. Louis Court of Appeals, March 9, 1909.**

1. **INSURANCE: Fraternal Beneficiary Associations: Assessments: Forfeitures.** The right of a fraternal beneficiary association to assess its members is strictly construed and can be exercised only when the conditions prescribed for its exercise in the contract of insurance exist; a member does not forfeit his membership by failing to pay an assessment made contrary to the laws of the order.

2. ————: ————: ————: **Illegal Assessments: Death Fund.** The constitution of a fraternal beneficiary association, whose death losses were paid by assessment of policy holders, provided that no assessment should be made to pay death losses as long as there was enough money in the death fund for the purpose. The association absorbed another association whose pol-

icies were written for a fixed and limited annual premiuᴜ ᴀɴᴅ a sum of money was paid out of the death fund to meet losses on account of new members thus acquired. *Held*, the sum thus paid out was illegally paid because paid on policies of a different class, and for the purpose of assessments of original members was still in the death fund; that the sum being sufficient to meet the losses at a given time, an assessment to meet such losses was illegal, and a failure of a member to pay an assessment so made would not forfeit his membership under a provision of the laws of his policy which provided for forfeiture in case of failure to pay.

3. ———: ———: ———: ———: ———. In such case, the fact that the death fund of the association owed the contingent fund of such association, on account for money transferred from the former to the latter, a sum in excess of the amount illegally paid on a different class of claims, so that in fact there would be nothing in .the death fund, if such debt were paid, would not change the result or work a forfeiture in such case.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Thomas J. Graydon* and *W. M. & Roy D. Williams* for appellant.

(1) The presumption is in favor of the propriety of an assessment, and liability on it can be avoided only by showing fraud or gross mistake, of which there was no evidence in this case. There was error in refusing defendant's ninth instruction. 11 Cooley's Briefs, 967; Insurance Co. v. Groff, 26 Atl. 63; 11 Cooley's Briefs, 961; Schmidt v. Insurance Co., 106 S. W. 1082; Hannum v. Waddill, 135 Mo. 162. (2) A mutual company is not required after every loss to compute the assessment necessary to meet the same, but may approximate it as nearly as possible, and the directors may exercise reasonable discretion in fixing the amount of an assessment. 11 Cooley's Briefs, 967.

*Ragland & McAllister* and *Fred Lamb* for respondent.

(1) Whatever may be the rule as to ordinary conduct of the board of directors in handling the business of the company no presumption will be indulged in favor of the company when the forfeiture of the rights of a member is involved. The facts entitling the company to the benefit of the forfeiture must be specifically proven. 19 Am. and Eng. Ency. of Law, 54; Powell v. Covenant Mutual Assn., 84 Ill. App. 304; 2 Bacon, Benefit Soc., 352, 354, 377. (2) The act of making an assessment is a ministerial, and not a judicial, one. Therefore no presumption can arise in favor of the regularity or legality of assessments, and it is an affirmative matter, both of pleading and evidence, necessary to establish a forfeiture for non-payment of an assessment; and the assessment should appear to have been made in the manner, mode and in conformity with the authority given, and for a proper purpose. 2 Joyce, Insurance, sec. 1310; Stewart v. Grand Lodge A. O. U. W., 46 S. W. 579; Murphy v. Mut. Reserve Fund Assn., 114 Fed. 404; Insurance Co. v. Hyde, 101 Tenn. 405; Benjamin v. Mut. Reserve Fund Life Assn., 79 Pac. 517; Insurance Co. v. Guse, 49 Mo. 332; Miles v. Mut. R. F. Life Assn., 84 N. W. 159; Society v. Helburn, 85 Ky. 1. (3) Proof that there was sufficient money belonging to the death fund on hand to avoid the necessity of a levy though concealed by having been wrongfully placed in another fund is such matter in rebuttal. Bagley v. A. O. U. W., 131 Ill. 498; Am. Leg. Honor v. Haas, 116 Ill. App. 587; Hannum v. Waddill, 135 Mo. 160.

GOODE, J.—Defendant is an assessment life insurance company organized under the laws of Illinois, and was formerly known as Knights Templars & Masons Life Indemnity Company. Under its original

name it issued a policy of insurance on March 8, 1889, for $3,000, to William B. Craig, payable to plaintiff, wife of the insured, at his death. Craig died February 13, 1906, having paid all assessments called for to October 1, 1905. As the company refused to pay plaintiff the indemnity, she filed a petition to recover it, alleging compliance with all the conditions of the policy by the insured prior to his death and compliance by herself as beneficiary with the post-mortem conditions. The defense is default of the insured in the payment of an assessment levied October 10, 1905, on the members of the company to pay two death losses of $5,000 each, of which assessment the evidence tends to show, notice was given to deceased November 1, 1905. It is alleged the default worked an instant forfeiture of the policy in suit, according to defendant's constitution and by-laws, which were part of the contract of insurance. In reply plaintiff says the assessment was illegal and a nullity because it was made when there was enough money in the death fund of the company to discharge the claims the assessment was levied to pay. The constitution and by-laws are a single instrument composed of different articles consecutively numbered, but not divided or designated separately by the two titles. Such portions of them as are relevant to the appeal will be epitomized. They require the board of directors to hold in trust the property and assets of the company in accordance with their provisions (article III, sec. 1). No member of the order may take out more than $5,000 insurance. On receipt of proofs of the death of a member, an assessment must be levied on the surviving members at a rate increasing with their age, and according to a prescribed table of rates, except in the contingency provided for in the constitution as follows: "No assessment shall be made for less than the above table of rates (i. e., one previously set out in the constitution) nor as long as the money in the death fund

will pay the maximum loss in full." If a member defaults in the payment of any assessment for sixty days after he is notified, the constitution says he shall be suspended, *ipso facto,* from membership and all benefits accruing therefrom, subject to certain opportunities for reinstatement (article VI, sec. 2). An annual due of one dollar for each thousand dollars of insurance is required on life policies (article IV, secs. 3, 4, 5). A death fund and a contingent fund are to be created in this manner: seventy-five per cent of all money accruing from assessments is to be placed to the credit of the death fund and used for no purpose except paying death losses and disability claims. All other money accruing. to the company must be placed in the contingent fund, out of which the expenses and "emergencies" shall be paid and the surplus invested in the name of the company in reliable securities (article VIII). It is apparent the contingent fund must include twenty-five per cent of the assessments, or the whole amount of them less the seventy-five per cent to be carried into the death fund, and include also the annual dues of one dollar for each thousand dollars of insurance. When a claim arises against the company in consequence of the death of a member, and is allowed by the directors, they are required to pay it in sixty days after receipt of satisfactory proofs of death, and there is this further proviso in the same connection; when the board of directors deems it expedient, the claim may be paid from the contingent fund" as an emergency, before the collection of the assessment, if any, which may be levied for the payment of said policy; and in such case the proportion of such assessment which would go to the death fund, or as much thereof as is necessary, may be used to reimburse the contingent fund" (article VII). When the surplus or contingent fund exceeds one hundred thousand dollars, a member who has kept up his policy for ten years, shall receive a bond bear-

ing three per cent interest for such portion of the surplus as the total sum paid by the member during the ten years bears to the total sum received by the company during said period (article VII, sec. 2). The constitution cannot be changed except at a regular meeting of the company and by a vote of three-fourths of the members present and voting. The foregoing regulations were in force during the membership of the deceased and were part of his contract with the company. By virtue of them he was bound to pay an assessment lawfully levied by the directors to meet death losses and if he did not, forfeited his membership and insurance (2 Joyce, Insurance, sec. 1249), with, perchance, the right to extended insurance under our statutes; a point not in contention and of which we say nothing. The whole issue between the parties relates to whether the assessment levied October 10, 1905, against the deceased and other members of the company, and of which the evidence indicates he was notified on November first but never paid, was a valid assessment; and the answer to this question depends in turn on whether there was enough money in the death fund when the assessment was levied, to pay the claims it was levied to meet. If there was enough money there to "pay the maximum loss in full" (that is, $5,000, or the highest amount of insurance a member could hold), then, under the quoted portion of article IV, section 4, of the Constitution, the directors were forbidden to assess the members, and no forfeiture of the membership of the deceased could be worked for omitting to pay an illegal assessment. The right to assess is strictly construed and it can only be exercised when the conditions prescribed in the contract of insurance exist. [Pac. Mut. Ins. Co. v. Giese, 49 Mo. 329; Planters Ins. Co. v. Comfort, 50 Miss. 662; 2 May, Insurance (4 Ed.), sec. 557; 2 Joyce, Insurance, sec. 1310.] The issue of fact regarding the adequacy of the death fund to meet the accrued claims

looks simple, but the circumstances from which it is to be determined are intricate. They are these: on February 16, 1905, about eight months before the date of the assessment in controversy, Albert Morgan, of whom the record tells us nothing except that he was a broker, submitted a proposal to defendant as agent of the Life Insurance Company of Philadelphia, Pennsylvania, to furnish defendant a list of the policy holders of said life insurance company with their names, mail addresses and the amount of insurance carried by each, the amount of premium, when it fell due, turn over to defendant all indexes, medical examinations and other papers and records relating to said company, with a letter from the company asking its members to transfer their insurance to defendant, and use his (Morgan's) best efforts personally to induce said members to do so, and guarantee the monthly income of the Pennsylvania company to be $20,000 and its membership 17,000. In payment for these services Morgan asked $200,000 in cash or negotiable notes. This offer was accepted by the executive board of defendant's board of directors, and $200,000 was paid Morgan out of defendant's contingent fund, which then amounted to upwards of $400,000. Six thousand of the Pennsylvania company's members transferred their insurance into the defendant company and a rider was attached to their policies whereby defendant agreed to assume liability to them according to the terms of the policies on the payment of one annual premium. Between February 16, 1905, when the deal was made, and October 10, 1905, when the assessment in dispute was levied, about $107,000 had been collected by defendant from those members as premiums on their policies and by order of defendant's president the entire sum was put in the contingent fund instead of putting three-fourths in the death fund and one-fourth in the contingent fund, as the constitution required. This course was adopted

as a temporary expedient, the president testified, it being expected the Pennsylvania members would take out policies with defendant, in which event they would come under the usual classification and be treated like original members. The president said as' defendant's death fund was largely in debt to its contingent fund, the management thought they could let all proceeds of the Pennsylvania policies go into the contingent fund temporarily and until proper entries could be made apportioning said proceeds properly between the death fund and the contingent fund, which was done January 1, 1907. The president also swore the object was to avoid complicated relations between the new and the original members. During said period from February 16th to October 10th, the sum of $21,470.25 was paid out for death losses on account of death among the members of the Pennsylvania company who had reinsured with defendant. This sum was paid from defendant's death fund and was, of course, previously in said fund and available for its proper purposes. These payments so far depleted the death fund that certain' losses which had accrued by the deaths of regular members prior to October 10th, could not be paid in full without assessing the surviving members, and it was the assessment then made which Craig failed or refused to pay, thereby forfeiting his insurance, defendant insists. On the other hand, counsel for plaintiff contend that as more than $21,000 had been paid out of the death fund between February 16th and October 10th on losses defendant was not liable for and had no right to pay, said money must be regarded as still in the death fund and available for valid losses, including those the assessment was levied to meet. They further contend seventy-five per cent of the money collected from the Pennsylvania members, or about $85,000 should have been credited to the death fund instead of the entire collection being credited to the contingent fund.

Hence they say defendant's constitution prohibited its directors from making the assessment in dispute. To justify the credit of the collections from the Pennsylvania members to the contingent fund and the payment out of the death fund of claims accruing in consequence of deaths among those members, counsel for defendant do not say the taking over of the Pennsylvania business was a transaction within the power of defendant's board of directors and valid, but concede its invalidity, we understand. Whether conceded or not, we are sure defendant's attempt to assess old members to pay Pennsylvania losses was illegal; for the Pennsylvania policies were written for a fixed and limited annual premium and were not assessment policies under the statutes of either Illinois or Missouri. [Rev. Stat. Ill. 1905 (Hurd), ch. 73, sec. 2363, Mo. Ann. Stat., sec. 7901; Williams v. Insurance Co., 189 Mo. 70.] And section 250 of chapter 73 of the Illinois statutes authorized no insurance company organized under the laws of some other State to do business in Illinois, unless the liability of its members to contribute to benefits was not "limited to the payment of a fixed periodical sum." Of like effect is section 7906 of our statutes (1899). In truth the defendant company had abandoned writing assessment insurance before the Pennsylvania business was acquired; its president testified six months before and its secretary from three to five years. It had gone into the business of issuing regular, or old line insurance, which the Pennsylvania business was, under the laws of this State and of Illinois. We have no occasion to decide whether or not defendant might do this lawfully, but only that it could not assess old members to meet the losses accruing on such insurance or pay those losses out of money raised by prior assessments. The courts have declared uniformly that members of mutual insurance companies cannot be assessed to pay demands for which their contracts do not

make them responsible; *e. g.,* losses which accrued before they became members, or on policies held by members in a different class of risks. [Knight v. Supreme Council, 6 N. Y. Supp. 427; Evarts v. Assn., 16 N. Y. 27; Commonwealth v. Ins. Co., 112 Mass. 192; Detroit, etc., Ins. Co. v. Merrill, 101 Mich. 395; Allen v. Winnie, 15 Wis. 113; Planters Ins. Co. v. Comfort, 50 Miss. 662, 671.] After the Pennsylvania business was taken over, the two classes of policies for which defendant had assumed liability, the Pennsylvania and the original policies, rested on independent bases and neither their proceeds nor their liabilities should have been commingled. The losses accruing on the Pennsylvania risks ought to have been paid out of the premiums collected from them, which were ample for the purpose, as they amounted to some eighty-five thousand dollars more than the losses. That they had been credited to defendant's contingent fund because it was a creditor of the death fund, was no excuse for not using them to pay the demands to which they were applicable. The debt of the death to the contingent fund was testified to be $403,000. This statement is mysterious in view of the constitutional provision requiring immediate reimbursement of the contingent fund by an assessment whenever an emergency arose in which a claim was paid out of said fund. Mysterious, too, is the amount of the contingent fund, which held between $250,000 and $300,000 in cash after paying Morgan a commission of $200,000. Without considering these and other matters with reference to the charges in the answer of fraud in the management of the company and in the levy of the disputed assessment, we hold the money in defendant's death fund could not be diverted to pay claims on the Pennsylvania policies simply because the proceeds of those policies, which were regular insurance for a fixed premium, had been diverted to make up a debt incurred long before by one of defendant's funds to the

other. We think both those acts were illegal, and as the Pennsylvania losses were paid out of money previously raised by assessing the old members, instead of out of the proceeds of the Pennsylvania policies, which should have been done, they ought to be treated as having been paid out of said proceeds, and the death fund as still containing the amount of those losses, or more than $21,000, when the assessment was made. It has been decided in a case much like this one as to the point in hand, that in the event of the use of a fund by the officers of a mutual insurance company to pay a class of risks for which the fund was not liable, an assessment cannot be made if the constitution allows assessments only when the fund is exhausted; that in such a case the fund is not exhausted but only misapplied. [Ohio Mut. Ins. Co. v. Marietta Woolen Factory, 1 Ohio Dec. 577; 10 West. L. J. 466.] In the present instance the death fund was not really exhausted. It may have been in appearance and because of the entries on the books, but these entries cannot control the rights of the matter as between plaintiff and defendant. The debit of the amount paid out on the Pennsylvania risks should have been charged against the money derived from those risks, not against the death fund of defendant; and we will treat them as having been paid out of the former.

It is argued by counsel for defendant, that because of the indebtedness of the death fund to the contingent fund, the directors would have the right to order an assessment even if they had not paid the Pennsylvania losses out of the death fund. We do not see on what theory this can be true. Assuming the debt was incurred in good faith and not in fraud or by acts of the directors which were *ultra vires,* they could have checked the $21,000 out of the death fund as a payment on the debt and then have levied an assessment to meet claims; because then the death fund would have been exhausted. They took no such course, but treated the fund as having money available to pay claims, and

claims, too, for which it was not liable. Having done so, they cannot, in the exigencies of this case, fall back on the theory of a right to treat the death fund as exhausted, not because there was no money in it, but because, so to speak, it was insolvent and owed more than it had cash to pay. The constitution absolutely precluded an assessment as long as there were funds in it to meet claims; and the acts of the directors prove beyond doubt they deemed there were funds in it which ought to be used for this purpose, instead of being used to pay its debt to the contingent fund.

The judgment is for the right party and we order an affirmance. All concur.