# Rosenberger, Light & Co. *versus* Washington Mutual Fire Insurance Co.

1. In a mutual insurance company the corporate rights of the assured may be subject to the control of the corporation, but his rights as a party insured rest on the contract. Assurer and insured alike are bound by the charter, and neither can do what it does not authorize.

2. Assessments in such companies must be limited to the objects declared in their charters and by-laws. The managers may exercise a reasonable

[Rosenberger, Light & Co. *v.* Washington Fire Ins. Co.]

discretion in fixing the amount to be raised, having in view the losses and the practical working of the company, but if these reasonable limits are transcended, the assessment is illegal and void.

3. An assessment was laid on a policy of insurance issued by defendants, a mutual company, to plaintiffs. It was admitted that notice of the assessment was duly received and its payment neglected by plaintiffs. Subsequently the property covered by the insurance was destroyed by fire, and immediately thereafter the plaintiffs offered to pay the assessment, but the company declined to receive it. The plaintiffs then brought suit to recover the amount of the policy. The assessment yielded a sum equal to twice the amount of the indebtedness of the company. At the trial the plaintiffs called a witness who testified that this excess *was so assessed in anticipation of future losses*. The plaintiffs contended that this assessment was invalid and that their policy was not forfeited nor suspended by their neglect to pay it. The court took an opposite view and directed a verdict for the defendants. *Held*, that this was error.

May 23d 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lebanon county :* Of May Term 1878, No. 127.

Debt by Rosenberger, Light & Co. against the Washington Mutual Fire Insurance Company, to recover the amount of a policy of insurance in said company.

The defendant company was incorporated by Act of Assembly of April 2d 1860 : Pamph. L. 770. The first section of this act authorizes the company to make by-laws for the management and regulation of its affairs. Sect. 4 provides that all persons insured shall be members in accordance with its by-laws during the period for which they shall remain insured. By sect. 5 all corporate powers are vested in and shall be exercised by a board of thirteen managers ; and sect. 8 is as follows : "That in case of loss by fire the managers shall have power to levy and assess the amount of said loss upon the persons insured in this corporation, pro rata, according to the amount or value of property insured by each respectively."

The plaintiffs made application for insurance in this company on the 4th of April 1868, and on the same day a policy of insurance was issued to them for the sum of $5250, covering their foundry and other property, as specified in the application and policy. The application contained the following agreement signed by the plaintiffs :—

"For value received, and in consideration of a policy of insurance to be issued by the Washington Mutual Insurance Company, at Lebanon, upon the approval of my application for insurance in said company of this date, I promise to pay the said company such sum or sums of money, and at such time or times, as the board of managers of said company may, for the purpose of paying losses by fire and the necessary expenses of the said company require ; payable within sixty days after notice and demand."

[Rosenberger, Light & Co. *v.* Washington Fire Ins. Co.]

An assessment, known as No. 5, was laid, to pay losses, on the 29th day of April 1871. Notice of this assessment was given to the members of the company. It was admitted by the plaintiffs that this notice was received by them and that they neglected to pay the assessment.

The property insured was destroyed by fire on 17th January 1872. This was on Saturday. On the Monday following the plaintiffs offered to pay the assessment. The company refused to receive it, and declined to pay the loss, on the ground that the policy was forfeited or suspended.

The actual liability or indebtedness of the company on the 29th April 1871, when the said assessment was laid, was $2305.48, and it appears that this assessment yielded $4950.34.

On the part of the plaintiffs it was alleged, and not controverted, that the loss was entire, and that under the charter, if they recovered they were entitled to the full amount of the insurance. It was further contended, on their behalf, that assessment No. 5 so far exceeded the amount required to meet the proper and legitimate expenses, indebtedness and losses of the company, as to render it illegal and void, and that therefore its non-payment did not of itself prevent a recovery in this case.

The plaintiffs submitted several points embracing this proposition, and the court, Henderson, A. L. J., in answer thereto, inter alia, said, " This question is a serious one, and for the present we instruct you, *pro forma*, that the neglect or failure to pay the said assessment, does not defeat the plaintiff's right to sustain this suit. But we shall reserve the question for future consideration, so that we may enter judgment as we shall hereafter determine the law to be, notwithstanding the verdict."

The verdict was for the plaintiff for $6992.12. Subsequently the court, in an opinion on the reserved point, inter alia, said, " We are of the opinion that assessment No. 5, was a legal and valid assessment, acquiesced in by the members of the company, not questioned even by the plaintiffs, at any time prior to their loss, and only subsequently, it would seem, as an afterthought, the case having been twice tried before any allegation was made of the invalidity of the assessment. The conduct of the plaintiffs, in this respect, is palpably inexcusable and without justification, and cannot and should not shield them from the consequences of their own default and neglect. They were members of a mutual company whose board of managers made an excessive assessment; surely they had a remedy ; it was their duty to have it corrected, to prevent its collection from their fellow members, at least to have spoken. Can it now be said, in equity or in fair dealing, when their company, by their representatives have collected it from their fellow members and appropriated it, without objection or complaint, in the face of an accepted legal notice and demand ? We think not.

6 Norris—14

"We therefore decline to enter judgment on the verdict. And judgment is entered for the defendant on the reserved question *non obstante veredicto.*"

The plaintiffs took this writ and assigned this action for error.

*Wayne Mac Veagh* and *Josiah Funk*, for plaintiffs in error.— The objects for which this company can levy assessments are clearly defined by law. It can only make them to meet legitimate expenses, and cover losses which have occurred, but cannot levy them in anticipation of losses. The plaintiffs agreed to pay assessments to pay losses, but under the express terms of the agreement. Such assessments were to be made only *after* the losses had occurred. This contract is binding on the company: Bliss on Life Insurance pl. 463; Insurance Co. *v.* Conner, 5 Harris 136; Columbia Ins. Co. *v.* Cooper, 14 Wright 340; Cumberland Valley Mutual Protection Co. *v.* Schell, 5 Casey 37; American Insurance Co. *v.* Schmidt, 19 Iowa 502; Flanders on Fire Insurance 18; May on Insurance, pl. 552.

Assessment No. 5 was illegal and void on the ground of its gross excessiveness. In Buckley & Co. *v.* Columbia Insurance Co., 2 Norris 303, Judge MERCUR says: "If the insured can show fraud, or clear mistake in making the assessment, it will constitute a defence, and refers to the following cases as illustrating the principle: Jones *v.* Sisson, 6 Gray 288: Peoples' Equitable Mutual Fire Ins. Co. *v.* Babbitt, 7 Allen 235; Traders' Mutual Fire Ins. Co. *v.* Stone, 9 Id. 483; Hummel & Co.'s Appeal, 28 P. F. Smith 320; York County Mutual Fire Ins. Co. *v.* Bowden, 57 Maine 286. In Sinnissippi Insurance Co. *v.* Taft, 26 Ind. 240, also a mutual company, the liabilities of the company amounted to $34,540.74. It had $17,755.91 available assets in hand. The indebtedness exceeded the assets by $16,724.83. An assessment was made, amounting in the aggregate to $22,521.26, overlapping the liabilities, after the assets on hand were deducted, only $5636.43; yet the court held the assessment to be illegal, and that the right of the company to make assessments was limited by the losses sustained and unpaid at the time of making the assessments. In the following cases the same principle was applied: Sands, Receiver, &c., *v.* Boutwell, 26 N. Y. 233; Bangs, Receiver, &c., *v.* Gray *et al.*, 12 Id. 477. May on Insurance, pl. 557–8–9, lays down the same rule.

"In an action for an assessment it must affirmatively appear, not only that losses have occurred, but that the assessment has been legally made:" Bliss on Life Insurance, pl. 466; The American Ins. Co. *v.* Schmidt, 19 Iowa 502; Atlantic Mutual Fire Ins. Co. *v.* Fitzpatrick, 2 Gray 279; Marblehead Mutual Fire Ins. Co. *v.* Hayward, 3 Id. 208; Savage *v.* Medbury, 19 N. Y. 36; Bangs *v.* Gray, 12 Id. 477; Thomas *v.* Whallon, 31 Barb. Id. 177;

[Rosenberger, Light & Co. v. Washington Fire Ins. Co.]

Herkimer Co. Mutual Fire Ins. Co. v. Fuller, 14 Id. 373 ; Jackson v. Roberts, 31 N. Y. 310 ; Kelly v. Troy Fire Ins. Co., 3 Wis. 254.

*A. R. Boughter, C. P. Miller* and *William M. Derr*, for defendants in error.—An act of excessive assessment, without fraud or gross mistake evidencing hishonesty or collusion in the managers in the manner in performing their duties, does not make an assessment illegal or void.   If an error in judgment as to the probable amount a certain rate of assessment may net, which depends upon so many unforeseen circumstances that no man can foretell ; and there is no evidence of fraud, or gross mistake amounting to fraud, then the assessment is valid and binding upon all its members. An assessment may be made in anticipation of losses, as otherwise great delay would be experienced in adjusting and paying them : Kelley v. Troy Fire Ins. Co., 3 Wis. 254.   The fraud or gross mistake intended by this court, in Hummel & Co.'s Appeal, 28 P. F. Smith 320, as also the words fraud and clear mistake in Buckley v. Columbia Ins. Co., 2 Norris 293, are to be understood as having relation, not to excessiveness of assessment, but to fraud or collusion among the directors, or gross mistake in the performance of their duties in making the assessment.

The cases cited by plaintiffs in error are decisions based upon particular statutes, which are totally different from our own, operating upon corporations unlike in their operations.

Mr. Justice Trunkey delivered the opinion of the court, June 10th 1878.

The plaintiffs, by taking the policy, became members of the corporation.   Sect. 8, of the act of incorporation, Pamph. L. 1860, p. 770, declares, "That in case of loss by fire the managers shall have power to levy and assess the amount of said loss upon the persons insured in this corporation, pro rata, according to the amount or value of property insured by each respectively."   Art. 14 of the by-laws directs that, "in all cases of loss or damage by fire to any member of this company, after the damage is ascertained, an equal and just assessment shall be laid upon every member of the company in proportion to the amount insured sufficient to cover said loss."   The assured agreed "to pay the said company such sum or sums of money, and at such time or times as the board of managers of said company may, for the purposes of paying losses by fire and the necessary expenses of the said company, require, within sixty days after notice and demand."

Nothing can be more certain than that the managers had no authority to make assessments in anticipation of losses.   The words of the charter and by-law need no interpretation ; they are too explicit to admit of doubt, and the contract being consistent

[Rosenberger, Light & Co. *v.* Washington Fire Ins. Co.]

therewith is governed by them. Indeed the latter contains no more than is necessarily implied in the former, for the expenses of the company must be borne by its members. They are, as members, subject to liabilities and entitled to privileges. A member may participate in its benefits, is presumed to know its rules and regulations, its books are evidence against him, and he shall bear his proportion of burdens. His corporate rights may be subject to the control of the corporation, but his rights as a party insured rest on the contract. Assurer and insured alike are bound by the charter, and neither can do what it does not authorize; nor can either change a by-law so as to modify the contract without the other's consent: Insurance Co. *v.* Conner, 5 Harris 136.

Assessments must be limited to the objects declared in the charter and by-laws. The managers may exercise a reasonable discretion in fixing the amount to be raised, for the charter must be construed in reference to its practical working. The actual sum required can be ascertained; but as expense must be incurred in the collection and loss be sustained in consequence of insolvency of members, proper allowances may be made for failures likely to result from these and other causes, and if the allowances are reasonable in amount and consistent with good faith on the part of the managers, they will not vitiate the assessment. But if these reasonable limits are disregarded and transcended, purposely or by culpable carelessness, the assessment is illegal and void: Jones *v.* Sissor, 6 Gray 288; Peoples' Eq. M. Fire Ins. Co. *v.* Babbitt, 7 Allen 235. In the latter case and in Traders' M. Fire Ins. Co. *v.* Stone, 9 Allen 483, it was held that an addition to the debts and reasonable allowance, of one hundred per centum, was so unreasonable as to make the assessment void. In those cases there was no evidence tending to justify so large an addition or excess; and, in the absence of such evidence, so large an excess, in most cases, would be prima facie proof of fraud or gross negligence.

By the terms of the charter the plaintiffs submitted themselves to the acts of the managers as representatives of all the members. They were bound by the assessment, unless they can show fraud or gross mistake. The presumption is that it was properly made: Hummel & Co.'s Appeal, 28 P. F. Smith 320. To overcome that presumption, the plaintiffs called J. H. Miller, who testified that assessment No. 5 realized, after deducting expenses of collection, $4950.34; that the liability of the company at the time it was ordered was $2305.48; and that the difference, $2644.86, was in anticipation of future losses that might occur. That testimony should have been submitted to the jury, with instructions that if they found the addition to the sum actually needed, was levied by the managers for the purpose of accumulating a fund for payment of future losses, they exceeded their authority and no member was bound to pay the assessment. Were there no direct proof of actual

[Rosenberger, Light & Co. *v.* Washington Fire Ins. Co.]

intent to violate the charter, the evidence showing the large sum netted, beyond that required and authorized, should have been submitted with proper instructions.   A positive intent to violate is a fraud; and heedlessly levying a large and unreasonable sum in violation of the charter is a gross mistake, affecting the members as if a fraud.   It is no part of the contract that members shall pay pro rata, into a fund for payment of losses when they shall occur, and which may not occur till after their membership ceases. The assured contracted to pay assessments for losses after they occur.   Simple excess arising from error of judgment, where the managers acted honestly and prudently, would not vitiate the assessment.   To neglect payment of a fair assessment suspends the policy. If the assessment was invalid, the policy was not forfeited or suspended by neglect or refusal to pay it: Peoples' M. F. Ins. Co., Petitioners, 9 Allen 319.

From the foregoing it follows that there was error in entering judgment in favor of defendant, *non obstante veredicto*, on the reserved question; and, also, in the reservation itself.   Had Miller's statements been admitted by defendant, judgment could now be rendered for plaintiffs upon the verdict.   His testimony was uncontradicted and no reason appears for doubting it; yet without an admission, by a party, of its truth, oral testimony against him cannot be taken from the jury in a reserved point that rules the case.

Judgment reversed, and *venire facias de novo* awarded.