## W. W. BRADFORD v. THE MUTUAL FIRE INSURANCE COMPANY, Appellant.

112   495
e115  489
115   491

**Insurance:** MUTUAL COMPANY TAKING PREMIUMS IN VIOLATION OF LAW. Where a mutual fire insurance company immediately on the issuance of a policy required the insured to pay a certain amount, before it had incurred any liability to other members on account of losses, and the company did not need funds to meet outstanding obligations, such amount was a premium, and not an assessment, and was, therefore, a violation of Code 1873, title 9, chapter 4, section 1160, under which the association was organized, prohibiting such associations from receiving premiums.

ESTOPPEL TO URGE THAT VIOLATION AS A DEFENSE: *Timely suit.* A mutual fire insurance company, organized under Code 1873, title 9, chapter 4, section 1160, providing that the provisions relating to other insurance companies shall not apply to mutual association, and that such associations shall receive no premiums, compelled insured to pay a premium. A by-law of the company provided that all claims should be paid within 90 days from due notice and proof of loss, and no action should be sustainable unless commenced within six months after loss. Acts Eighteenth General Assembly, chapter 211, fixes the time within which such notice of loss shall be made, and provides that no action shall be begun within 90 days after such notice had been given, which provision applies to all contracts of fire insurance, anything in the contract to the contrary notwithstanding. The insured brought action.

within the time limited by section 211, but not within six months after denial of liability by the company. *Held*, that the action was commenced in time, even if Acts Twenty-eighth General Assembly, chapter 211, ·did not apply to mutual fire associations organized under Code 1873, title 9, chapter 4, section 1160, since, as defendant was doing business in violation of section 1160, in exacting a premium from its members, it could not claim exemption from the operation of chapter 211.

`TIMELY SUIT: *Dates from proof of loss*. Where the by-laws of a mutual fire insurance company provide that all claims shall be paid within 90 days from proof of loss, and that no action shall be sustainable unless commenced within six months after loss occured, and the contract of insurance gave insured the right to bring his action at any time within the six months after the loss became payable, an action commenced within six months from the expiration of 90 days after notice of the fire is commenced in time, since the loss was not payable until the expiration of such 90 days.

*Proof loss permissible though waived*. Where a mutual fire insurance company, on notice of a fire, wrote insured, denying liability, he was not obliged to rely upon such denial as a waiver of proof of loss, but he might go on and make such proofs.

··*Construction of statutes*. Acts Eighteenth General Assembly, chapter 211, fixes the time within which notice of loss by fire shall be given the insurer, and provides that no action shall be begun within 90 days after such notice has been given, which applies to and governs all contracts of fire insurance, anything in the contract to the contrary notwithstanding. Code 1873, title 9, chapter 4, section 1160, relating to insurance companies, provides that nothing in the chapter shall prevent the organization of mutual associations, and that the provisions of the chapter as to other companies shall not be applicable to such associations. *Held*, that chapter 211 applies to and governs mutual fire associations organized under section 1160, as to the time within which actions shall be commenced.

`Forfeiture of Policy: NON-PAYMENT OF PREMIUMS: *Notice*. A mutual fire insurance association, organized under Code 1873, title 9, chapter 4, section 1160, prohibiting such associations from receiving premiums, took a note from insured for a premium for a definite amount, payable in 60 days, providing that, if not paid when due, the policy should be suspended without further notice. The note was not paid when due, and a loss occurred

thereafter. *Held*, that the failure to pay the note when due did not suspend the policy, where the association had not given plaintiff the notice required by Acts Eighteenth General Assembly, chapter 210, sections 1, 2, providing that a fire insurance association taking a note for a premium shall not declare the policy suspended for non-payment of the note unless 30 days prior thereto the company had given the assured written notice that his premium is due, and unless paid within such time his policy will be suspended.

*Appeal from Union District Court.*—Hon. W. H. Tedford, Judge.

Friday, December 21, 1900.

Action upon a policy of fire insurance. A jury being waived, trial was had to the court. From a judgment in plaintiff's favor, defendant appeals.—*Affirmed.*

*Wm. C. Miller* for appellant.

*Sullivan & Sullivan* for appellee.

Waterman, J.—Two questions are submitted for our consideration, which we shall take up in the order in which they are presented. It is necessary, however, to an understanding of these matters, that a brief statement of the facts be made. Defendant company, as alleged, was organized under section 1160, chapter 4, title 9, Code 1873, and amendments thereto, and claims to have been doing business as thereby authorized. The date of its organization is not given, so we are unable to say just how far section 1160 had been amended when defendant came into existence, for a number of amendments were made at different times. Neither are the articles of incorporation or by-laws of defendant set out in the record, further than to give a single provision of each. The provision taken from the articles of incorporation we need not quote; the section of the by-laws given relates to the time of bringing action. It will be further noticed later on. It is obvious that we

have no way of determining the general manner in which defendant did business, further than as it may be deduced from the terms of the policy in suit and the dealings with the plaintiff herein. We shall take section 1160, with the amendments shown thereto, as the same appears in McClain's Code (being section 1723 thereof), as being the law under which defendant's organization was effected. The argument of counsel justifies us in this, and certainly defendant cannot complain. That section is a part of chapter 4, relating to insurance companies generally. It provides that nothing in the chapter shall prevent any number of persons from making mutual pledges and giving valid obligations to each other for their own insurance, and that the provisions of the chapter shall not be applicable to such associations or companies. Then follows this clause: "But such associations or companies shall receive no premiums nor make any dividends." Nothing in this record shows that defendant had any right or power to assess its members; nor does it appear from what source it obtained funds with which to pay losses, other than is disclosed in its dealings with plaintiff. The policy was issued to plaintiff on the fourteenth day of February, 1896. Immediately upon its issue he was required to pay to defendant (or perhaps we had better say became liable to pay, for he secured a credit for a time) the sum of $20. This is called by appellant an "assessment." But we may properly say now, in order to dispose of the matter in this connection, that it was in fact a premium, and not an assessment. Plaintiff had then incurred no liability to other members on account of losses. It is not shown that the association needed funds to meet outstanding obligations. Under these circumstances, this exaction was a premium, and nothing else. *Matthes v. Association,* 110 Iowa, 222. Plaintiff's loss occurred on November 19, 1896. Immediately, notice thereof was given the company, and on the following day, by letter, defendant acknowledged receipt of the notice of loss, and de-

nied liability because a note given by plaintiff was past due and unpaid. The note, we may say, was an ordinary promissory note for $20, dated September 12, 1896, due in 60 days. It contained, however, a clause to the effect that, if not paid when due, the policy should be suspended without further notice on the part of the company. Plaintiff on December 4th following sent proofs of loss to defendant, which were received on the same day, and on July 7, 1897, this action was begun. A provision of the by-laws of the company to which reference has already been made was as follows: "The company shall pay all claims for loss or damage within 90 days from due notice and satisfactory proofs thereof made. * * * and no action for the recovery of any loss or damage shall be sustainable in any court of law unless commenced within six months after the loss or damage shall have occurred." We are now prepared to take up the two questions presented and discussed by appellant.

I. Was the action commenced in time ? It will be noticed that this suit was not begun until more than six months after the denial of liability by defendant. Answering a claim made by plaintiff, we will say that, as a member of this company, he was bound to know the terms of its by-laws, which were made a part of the contract by a provision of the policy. Nevertheless there remains more than one complete answer to defendant's claim that the action is barred. Plaintiff was not obliged to accept and rely on defendant's denial of liability as a waiver of proofs of loss. There might have been some difficulty, real or apprehended, in establishing the fact of such denial. He was entitled, if he saw fit, to go on and make such proofs. By the terms of the policy, if we accept those terms as governing, he had a right to bring his action at any time within six months after the loss became payable; and the loss was not payable, under the by-laws set out, until the expiration of 90 days after no-

tice of. the fire. *Ellis v. Insurance Co.,* 64 Iowa, 507; *Quinn v. Insurance Co.,* 71 Iowa, 615. . Again, if we assume that the provision relating to the time of bringing suit, as contained in chapter 211, Acts Eighteenth General Assembly, does not apply to companies organized and acting under section 1160, Code 1873, we do not think that defendant has shown it would be exempt. It is conceded the action was commenced in time, under the terms of that chapter; and defendant, under no view of the facts, can claim exemption from its provisions. Defendant was doing business in violation of the positive requirements of section 1160 in that it exacted a premium from its members. There is no merit in the claim that, if it was not doing business in accord with that section, its policy was void, because effecting the insurance would be an act *ultra vires,* and for this reason no suit could be maintained upon it. No such issue is presented by the pleadings, and if it had been it might well have been met with the holding of this court on a similar proposition in *Matt v. Society,* 70 Iowa, 455, . that the policy is "not to be treated as valid for the purpose of collecting [premiums], and invalid for the purpose of escaping liability." Finally we are of the opinion that chapter 211, Acts Eighteenth General Assembly, applies to and governs associations and companies organized and acting under section, 1160, Code 1873. The clause in the latter section to the effect that the provisions in the chapter in which it appeared should not apply to associations or companies organized under that section, while doubtless referring to many provisions then contained in that chapter, in relation to the government and management of insurance companies, could not have had reference, when enacted, to an act of the Eighteenth General Assembly, not then in existence. This act of the Eighteenth General Assembly fixes the time within which notice of loss shall be made, and concludes thus: "Provided, further, that no action shall be begun within ninety days after such notice has been given.

All the provisions of this chapter shall apply to and govern all contracts and policies of insurance contemplated in this chapter, anything in the policy or contract to the contrary notwithstanding." This language is broad enough to include such an association as defendant claims to be, and the reason that induced the passage of the act would apply to such a corporation. It was manifestly intended to make a uniform provision applicable to contracts of insurance, so that the assured, often unfamiliar with the terms of his contract, might be apprised by law of his rights. We have held this provision applicable to life insurance companies doing business on the assessment plan. *Christie v. Investment Co.,* 82 Iowa, 361. We can see no reason for exempting any mutual company from its requirements. It is true, these various provisions appear under a different arrangement in the Code. What effect, if any, should be given that fact, we need not now say. The rights of the parties here were fixed prior to the going into effect of the Code.

II. The next question is, did the failure to pay the note when due effect a suspension of the policy? Section 1 of chapter 210 of the Acts of the Eighteenth General Assembly provides: "In every instance where a fire insurance company or association doing business in this state shall hereafter take a note or contract for the premium on any insurance policy, or hereafter shall take a premium note or contract, which by its terms, or by any agreement or rule of the company or association, is assessable for the premium due on the policy for which it was given, such insurance company or association shall not declare such policy forfeited or suspended for non-payment of such note or contract except as hereinafter provided." Section 2 provides that, before a suspension can be had for failure to pay premium or assessment, 30 days prior thereto, the company must give to the assured written notice of the fact that his premium or assessment is due, and that, if not paid within such time, his policy will be suspended. No such written

notice was given plaintiff. It is insisted in this connection by appellant that the statute quoted is not applicable to companies organized under section 1160, Code 1873, for the reasons already set out. We might dispose of this on the grounds above stated, viz: that defendant had not been doing business as provided in the section mentioned. But we may add something further as a reason for overruling this contention. Defendant cites authorities to show that deposit notes (that is, notes taken to secure future assessments) are not to be treated as promissory notes, and it is argued that it would be impossible to tell 30 days in advance of maturity how much would be due on such notes. But neither these authorities nor arguments apply here. This note was not a deposit note. It is an absolute promise to pay on a date fixed a certain sum as a premium on the policy. There was never, after its delivery, any uncertainty as to the amount that would be due on it at maturity. It is because it was not paid according to its express terms that a suspension of the policy is now insisted upon. If, then, this company had a right to take the note in question, there appears no reason why it should not comply with the requirements of chapter 210, Acts Eighteenth General Assembly. *Beeman v. Association*, 104 Iowa, 83, cited by appellant, is not in conflict with our holding here, but, rather, tends to support it. The requirement of the Acts of the Eighteenth General Assembly was there sought to be applied to an assessment, not to a note. Our holding was that such act did not apply to companies organized as defendant here was, because they had no authority to receive premiums, but that it did apply to all associations taking a note or contract for a premium. If the question of defendant's right to take this note under the law were in issue here, which is not the case, it could gain no advantage from the fact that it had received it in violation of law; that is, it could not treat it as a note for the purpose of suspending the policy, and at the same time maintain that it was not a valid note, because the company had

no right to take it. In our opinion, the case was correctly decided by the trial court, and the judgment below is AFFIRMED.