JAMES LOWE CHRISTIE MATHESON, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

INSURANCE: Accident Insurance—What Constitutes Accident—
1 Evidence—Sufficiency. Evidence reviewed, and held to establish bodily injury through external, violent and accidental means, and that the blindness resulting therefrom occurred within the period of time covered by the contract.

PLEADING: Amendments—New Defenses. Amendments during trial setting up *new* defenses are allowable when the opposite party (a) suffers no surprise, (b) does not ask for a continuance, and (c) is not legally prejudiced. So held where the amendment set up a contract provision limiting the time in which action might be brought.

INSURANCE: Actions—Limitations by Contract—Accrual of Action. A cause of action on an accident policy of insurance accrues on the expiration of 40 days from the date on which the insured *actually gives notice and proofs of loss.* (Section 1744, Code Supplement, 1913.)

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

SATURDAY, SEPTEMBER 22, 1917.

ACTION at law to recover indemnity under a certificate of membership in defendant association. There was a trial to a jury and a verdict and judgment for plaintiff for the amount claimed, $1,250, interest and costs. The defendant appeals. Plaintiff has also appealed from the ruling of the court in permitting defendant to amend its answer.—*Reversed on defendant's appeal and affirmed on plaintiff's.*

*Sullivan & Sullivan,* for appellant.

*Dowell, McLennan & Zeuch,* for appellee.

PRESTON, J.—Plaintiff alleges that he became a member of defendant association February 11, 1913, and a copy of his certificate of membership and a copy of the articles of incorporation and by-laws referred to therein are made a part of the petition; that such exhibits and application constitute the contract between the plaintiff and defendant; that, on September 27, 1913, in the state of California, and while plaintiff was in good standing in defendant association, he sustained bodily in-

1. INSURANCE: accident insurance: what constitutes accident: evidence: sufficiency.

juries through external, violent and accidental means, as follows: While plaintiff was riding in his buggy, the horse became suddenly frightened, and turned the buggy quickly, causing plaintiff to be thrown against the iron frame of the buggy, and to strike his left eye against the frame. He further alleges that he did not then know he had received any injury which would result in any impairment in the sight of his eye; that he immediately consulted a physician and was advised that no injury had been done to the eye, and that plaintiff would not be incapacitated as a result of the injury; that, on January 29, [12] 1914, the same physician advised plaintiff that he would totally lose the sight of said eye, and as a result of said injury, plaintiff has totally lost the sight of his eye; that, within 15 days from the time plaintiff had knowledge that said accident would result in the impairment of his sight, he notified defendant in writing of said accident and the injury therefrom; that one of the by-laws of defendant association provides, "or if such injuries shall result in the loss within 90 days from the date of said injury of the entire sight of one eye, the member shall receive as indemnity the sum of $1,250." Plaintiff further alleged that at the date of his injury, and at the time of the discovery of the same, he had lost the sight of his eye, and was therefore entitled to $1,250; that plaintiff has demanded the compensation provided in the contract, but that defendant has failed and refused, and now refuses, to pay any part thereof; that, by reason of the said acts of injury resulting therefrom, and by reason of his membership in said association, said sum is due plaintiff.

For answer, defendant denied all allegations of the petition; denied that plaintiff ever furnished any notice of injury or proof of loss or disabilty within the time and in the manner and form provided in the by-laws, and that by reason thereof, there is no liability on the part of de-

fendant. For further answer, defendant alleged that, if plaintiff sustained bodily injuries as alleged, they were not sustained through external, violent and accidental means. Afterwards, and by way of amendment to answer, and over plaintiff's objection, defendant stated that it was provided in the contract sued on that:

"No action of any kind or character shall be commenced in any court against the association to recover any benefit or indemnity provided for in this article unless the same shall be commenced within twelve months after the cause of action accrues, and after said period all liability of this association to such member, beneficiary or heirs for indemnity and benefits on account of such injuries shall cease and end."

Defendant charged at the time of the commencement of this action that more than 12 months had elapsed after the cause of action therein had accrued, and that, by reason of all the foregoing, there was no liability. As to the nature of the injury and the effects of it, after stating how it occurred, plaintiff, as a witness, says:

"A swelling immediately arose. In a few moments I realized that I could not see out of that eye. I called upon Dr. Thomas. Within an hour or so after the accident occured, the sight returned to the left eye for a few seconds and then disappeared again, and has never returned since that time. I explained all these facts to Dr. Thomas, and he advised me to use hot and cold compress treatment, in the hope that the sight would be restored. Dr. Thomas explained to me, on my first visit, on September 29, 1913, that it would take three months' treatment to accomplish the desired result. During all that time I applied the hot and cold compresses two or three times a day, and during all that time I was not able to see out of the eye. I had no sight in that eye from the time the injury was received, except a few moments that sight returned within an hour

or so after the accident first occurred. I am now convinced and state the fact to be, that the eyesight was totally, completely and absolutely destroyed when it disappeared within an hour or so of the accident. When the three months' period treatment was up, I returned to Dr. Thomas and he then made an examination, and informed me that the eyesight was totally, absolutely and forever destroyed, and that the eye was totally and absolutely blind."

Plaintiff testifies that he followed the treatment which the doctor had prescribed with the hope that, as Dr. Thomas had advised him, the sight might be restored, and that the first time the doctor advised him that the sight was gone was on January 12, 1914. He says the reason he did not notify defendant of the injury until after January 12, 1914, was because he relied upon the statements of the doctor that the loss of his eyesight might be restored if he followed the treatment. Plaintiff further testifies:

"My understanding of the condition of my left eye after the injury and at the time of my consultation with Dr. Thomas was this: The sight of the eye was gone at that time, but there was a hope that this was only temporary, and that the hot and cold compress treatment might restore the sight. Having this hope, I consented to follow the prescribed treatment and did follow the same, but without successful result. The first time that I knew for certain that the eyesight was absolutely and forever gone, was when I visited Dr. Thomas, January 12, 1914. Before that time I knew, of course, that I could not see out of the eye, but I was in hopes that this absence of sight was only temporary, and that the treatment would restore the sight. I discovered the loss of my eyesight immediately after the accident, but the sight returned in an hour or two after the accident, but only for a few moments, and then disappeared. I became totally blind in the left eye within an hour or two after the accident.

which occurred September 27, 1913. I know now that I was totally blind in the left eye within an hour or so after the accident occurred, but I did not realize this until Dr. Thomas made his examination, January 12, 1914."

Plaintiff further states that, after the doctor advised him that his eyesight was gone, he notified defendant, and accordingly mailed a letter or notice to defendant February 18, 1914, as follows:

"Oakland, Cal., February 18, 1914.

"Iowa State Traveling Men's Association,

"Mr. A. W. Rader, Secretary,

"Des Moines, Iowa.

"Dear Sir: The undersigned, James Lowe Christie Matheson, notifies you as follows: That I am the holder of certificate of membership No. 84467, of your association. That I am now and have been for the past twelve months employed as traveling salesman for Moore-Watson Dry Goods Company, Front and Market Street, San Francisco, California. On Saturday, September 27th, 1913, as my stepson, John O'Donnell, and I were riding in my buggy to the car line of Hayward, Alameda County, California, I met with an accident as described by Dr. Howard G. Thomas. As his notification gives a full report on the same, there is no necessity for my going into further detail at present. That, under the terms and conditions of your certificate of membership, I am entitled to receive from the above association for the loss of my left eye, $1,250, which I ask you to forward as soon as convenient for the association to do so. If the association has blank forms for notification of injury to its members, and blank proof of injury, I will ask you to forward any of such necessary blanks as you desire for me to fill, and I am willing to give you any other further proof of my injury that the association may require. I enclose herewith my physician's notification and report to the said Traveling Men's Association.

Trusting that I may hear from you immediately, and that you will forward all necessary blanks for me to fill out for such notification and proof of injury, I am,

"Very sincerely,

"JAMES LOWE CHRISTIE MATHESON.

"No. 1202 Hampel Street, Oakland, Calif."

This notice was received by the defendant company February 24, 1914. Dr. Thomas also sent a report to defendant as follows:

"Physician's notification and report to the Iowa State Traveling Men's Association, and to A. W. Rader, its secretary, of the examination of James Lowe Christie Matheson.

"The undersigned physician, Hayward G. Thomas, M. D., notifies the said association as follows: That he is a duly licensed and practicing physician under the laws of the state of California, having his offices at Rooms 509-514, Dalziel Building, No. 532 15th Street, Oakland, California. That, on September 29, 1913, at about half past two o'clock P. M. thereof, the above named James Lowe Christie Matheson came to my office for medical examination and treatment. He stated to me that, on the preceding Saturday, viz., September 27, 1913, he had met with an accident when on his way to the railroad train at the town of Hayward, Alameda County, California, and that the accident occurred in this manner: That he was riding in his buggy, when the horse drawing the same became frightened, turned the buggy quickly and threw him violently against the iron frame of the buggy, which struck him over the left eye. That upon careful and thorough examination of said Matheson, I found the injury resulting from striking the iron had caused hemorrhages in and around the left optic nerve, and caused blindness from atrophy of the left optic nerve. That the blindness of the left eye is total and permanent, and the sight thereof can

never be restored. That I have given said Matheson medical treatment for the injured eye, and in' my opinion said blindness is not affected by any infirmity or disease existing previous to the accident, and that the disability was caused by the above mentioned accident. The right eye is normal.

"HAYWARD G. THOMAS.

"Dated January 29, 1914, Oakland, California."

Thereafter, plaintiff received from defendant the following:

"Iowa State Traveling Men's Association.

(Letter Head.)

"Des Moines, Iowa, February 24, 1914.

"Mr. Jas. L. G. Matheson, 1202 Hampel St., Oakland, Calif. My Dear Sir: We have your letter of the 18th instant, and affidavit of Dr. Thomas, advising us that you sustained an injury on September · 27, 1913, which resulted in the loss of an eye. We are not sending you any blanks with the idea of leading you to believe that you are entitled to benefits from this association on account of your injury, inasmuch as more than four months have elapsed since you received such injury, and the by-laws of the association provide that notice of injury should be given within fifteen days, and that failure to give notice within ·sixty days invalidates any claim for indemnity. We regret the necessity of having to give you this advice, but under the circumstances, have no alternative.

"Yours very truly,

"Claim Dept. MR                    "J. S. IRISH, Secretary."

No blank proofs of loss were ever sent by defendant. The substance of the testimony of Dr. Thomas, and as set out by plaintiff, is as follows:

"I advised him that the hemorrhage in his eye was probably due to the injury he had received while riding in the buggy; that the sight of the left eye was impaired,

but that the eyesight might be saved, and I so advised him and prescribed treatment for that purpose. I did not think that the sight was permanently gone then, or that the eye was permanently impaired in vision, and so I prescribed the hot and cold compress treatment. I first discovered that Matheson had lost the sight of his left eye on January 12, 1914. By January 12, 1914, I knew that the sight was permanently and absolutely gone. That was the first time that I knew it, but probably he had been blind permanently some time before that, because that process was a gradual one; but he did not realize that the condition was permanent blindness, nor could he realize that until I so advised him, because the loss of vision or total blindness was due in his case to gradual atrophy of the optic nerve caused in turn by the violent blow. My present opinion is, looking back over the history of his case and the conditions in all their phases, that Matheson was blind from the time of the accident, except in the hours when he says sight returned for a short while, but he did not realize this was permanent blindness and hopelessly so, nor did I, before January 12, 1914, because there was the hope that the optic nerve had not been permanently injured, and hence the sight might yet be saved. January 12, 1914, I made an ophthalmoscopic examination. That is, I took the patient in a dark room, and with an instrument made for that purpose I looked into the interior of his eye, and found the optic nerve dead, and announced the sight totally gone and the man permanently and hopelessly blind in the left eye."

The doctor also testified:

"I have practiced 28 years. When plaintiff came to me, September 29, he was suffering with optic neuritis, with hemorrhage in the retina around the optic nerve. The sight of the left eye was impaired, but I thought the eyesight might be saved and so advised him, and I pre-

scribed certain treatment/for him. I examined him next
on January 12, 1914. I found the optic nerve in the
left eye dead. There were no arteries to be seen. This
means that the arterial blood which nourishes the optic
nerve retina was absolutely gone, and therefore the eye
was blind. His condition on January 12, 1914, was in my
opinion directly traceable to the original injury of September 27, 1913. If the treatment advised could absorb the
hemorrhage, in my opinion the eye and sight could be
saved, but when I saw him on January 12th, I found then
that the sight was gone, and that the eye was absolutely
blind."

Section 3, Article VI, of the by-laws of defendant
association, provides, among other things:

"Whenever a member in good standing shall through
external, violent and accidental means received bodily injuries which shall independently of all other causes result
in the loss, within 90 days from said injuries of the entire
sight of one eye, the member shall receive as indemnity
the sum of $1,250. Provided, however, that the said member shall give, or cause to be given, due notice in writing
to the secretary of the association, giving date and place
where, and the circumstances under which said injuries
were received, also the nature of the injury sustained, together with the name and address of his medical attendant.
Such notice shall be given the secretary of the association
within 15 days after the date of injury is received, and failure to give such notice within 60 days from the date of injury shall invalidate any claim or indemnity under his membership. No claim under this section shall be valid unless
such written notice of said injuries shall have been sent to
the secretary of the association as hereinbefore provided,
and unless there shall be sent to the secretary of the association due preliminary proof of injuries, on blanks which
will be provided by the association upon request, setting

forth the nature and the extent of the injuries sustained, together with a report of his attending physician.

"Sec. 4, Art. VI: No action of any kind or character shall be commenced in any court against this association to recover any benefit or indemnity provided for in this article unless the same shall be commenced within 12 months after the cause of action accrues, and after said period all liability of this association to such member, beneficiary or heirs for indemnity and benefits on account of such injuries shall cease and end. * * * This association shall not be liable to any member for any benefit or indemnity unless the notices of the injuries and proofs of disability are given and furnished this association within the several period of the time fixed. Any member failing to so furnish said notices and proofs shall forfeit all rights to said benefits, and this association in such case shall, without any acts of its officers so declaring, be released from any and all liability to the said member; his beneficiary or heirs on account of such injuries."

Also, the provision before set out as a part of defendant's amendment to answer. The defendant offered no evidence except the by-laws and the pleadings and filing dates, and the original notice. The original notice was placed in the hands of the sheriff April 21, 1915, and the petition was filed April 22, 1915.

1. Taking up first plaintiff's appeal from the order of the court permitting defendant, on May 15, 1916, to file the amendment to answer heretofore set out: Plaintiff moved to strike said amendment on the ground that it sets out and pleads a matter of the statute of limitations, matter which he says must be pleaded specifically in the answer, or it will be deemed waived, and that it pleads a new and specific defense not mentioned in the original answer, and further that plaintiff is surprised because it

2. PLEADING: amendments: new defenses.

sets up a new defense, and for the reason that depositions had been taken prior thereto, and that such issue was not in the case when the depositions were taken. The amendment was filed during the trial and before the evidence was closed. Appellee cites and relies upon the case of *Greenlee v. Home Ins. Co.,* 103 Iowa 484.

Conceding that the record in the two cases is somewhat similar, it will be noted that the motion to strike the amendment in the *Greenlee* case was sustained, and the court held that, because the allowing of amendments is so largely within the discretion of the trial court, there was no error. So, in the instant case, had the trial court sustained plaintiff's objection, or motion to strike, doubtless the holding would be the same. But in the instant case, the motion was overruled, and, under the same rule in regard to the discretion of the trial court, we think we ought not to interfere. The rule is to allow amendments, and to deny the right is the exception. The plaintiff did not ask for a continuance, so that the trial was not delayed. Furthermore, the defendant offered no evidence in the case except the files showing the dates of the commencement of the action, as bearing upon the statute of limitations provided for in the certificate. This was all known to the plaintiff as well as the defendant, and we are unable to see how plaintiff could have been surprised or prejudiced. Under all the circumstances shown, we think there was no abuse of the discretion of the trial court such as to constitute reversible error. See *Livingston v. Heck,* 122 Iowa 74, 77; *Mansfield v. Mallory,* 140 Iowa 206, 209; *Franzen v. Hutchinson,* 94 Iowa 95; *Daly v. Simonson,* 126 Iowa 716; *McCormick Mach. Co. v. Richardson,* 89 Iowa 525.

2. Defendant claims that it is not shown that plaintiff received bodily injury through external, violent and accidental means, resulting in the loss of eyesight, within the terms and meaning of the by-laws of defendant. But this

proposition is not seriously argued. The question was submitted to the jury under proper instructions. We think the evidence before set out, which will not be further discussed, justified the finding of the jury.

3. It is next contended by appellant that indemnity is only payable under the contract where the loss of eyesight results within 90 days from the receipt of accidental injuries. The defendant offered an instruction to the effect that the jury must find for the defendant unless it was found that plaintiff's injuries resulted in the loss of the entire sight of his eye within 90 days from the receipt of his injuries. The trial court, by proper instructions, left it to the jury to find whether the loss of eyesight did result from such injuries, and within 90 days. Under the evidence before set out, we think the jury could not have found otherwise than that the plaintff did lose the sight of his eye within 90 days from the date of his injuries. In fact, as we view the record, there is substantially no dispute on this point. We would even go further, and say that it cannot be fairly said that plaintiff did not lose the sight of his eye within a few hours even, after he received his injuries, though appellee contends that he had no knowledge of that fact until January 12, 1914. Indeed, appellant concedes in argument that plaintiff lost the sight of his eye within 90 days, for it says:

"Upon the issue as to whether or not in fact his eyesight was totally lost within 90 days, there is no dispute."

Appellant contends further that there is no dispute in the record but that plaintiff knew from the first that he would not see, and that he had lost the entire sight of one eye, because plaintiff testified: "I became totally blind in the left eye within an hour or two after the accident." Appellee also concedes in argument that the evidence is undisputed that plaintiff lost the sight of his eye within 90 days from the date of the injury. Under this

record, it is clearly unnecessary to discuss this feature of the case further. It is true, of course, that 90 days from the date of the injury would be before January 12, 1914, the date when plaintiff claims he first had knowledge from Dr. Thomas that he had lost the sight of his eye. The correct date here is January 12th, as we understand the record, though given as 29th a part of the time.

4. Appellee claims that the loss of the sight of his eye immediately followed the injury, but that the blindness was not known to him until after the period of 90 days. Appellant says that this claim is made by plaintiff to excuse his failure to furnish proof of disability within 60 days from the date of disability, as provided by defendant's by-laws. Defendant also contends that no proofs of injury were made within 90 days of the receipt of the injury, as provided by the contract. It is conceded, as it must be, under the record, that no notice or proofs were given within 90 days, but it is the contention of appellee that he was entitled to 90 days from the date when he had knowledge that he had lost his eyesight, citing Section 1820, Code Supplement, 1913; *Baumister v. Continental Casualty Co.*, 124 Mo. App. 38 (101 S. W. 152); *United States Casualty Co. v. Hanson*, (Colo.) 79 Pac. 176; *Peele v. Provident Fund Society*, (Ind.) 44 N. E. 661 (46 N. E. 990); *Rorick v. Railway Officials', etc., Acc. Assn.*, 119 Fed. 63 (55 C. C. A. 369); *Odd Fellows Fraternal Acc. Assn. v. Earl*, 70 Fed. 16 (16 C. C. A. 596); *Hoffman v. Manufacturers' Accident Indemnity Co.*, 56 Mo. App. 301; *Hayes v. Continental Casualty Co.*, (Mo.) 72 S. W. 135; *Woodmen Accident Assn. v. Byers*, (Neb.) 87 N. W. 546 (55 L. R. A. 291); *Trippe v. Provident Fund Society*, (N. Y.) 35 N. E. 316 (22 L. R. A. 432); *Manufacturers' Accident Indemnity Co. v. Fletcher*, 5 Ohio Cir. Ct. 633; *Comstock v. Fraternal Accident Assn.*, (Wis.) 93 N. W. 22; *People's Mutual Accident Assn. v. Smith*, (Pa.) 17 Atl. 605; *Simpkins v. Hawkeye Com'l*

*Men's Assn.*, 148 Iowa 543; *Lyon v. Railway P. A. Co.*, 46 Iowa 631; *Maryland Casualty Co. v. Ohle*, (Md.) 87 Atl. 763.

Appellant contends that the court erred in submitting to the jury the issue as to whether plaintiff knew that he had lost his eyesight within 90 days from the receipt of bodily injuries, because of Section 3, Article VI of the by-laws. It cites *Carnes v. Iowa S. T. M. A.*, 106 Iowa 281 286; *Taylor v. Pacific Mut. Life Ins. Co.*, 110 Iowa 621, 623; *Binder v. National M. A. Assn.*, 127 Iowa 25; *International Trav. Assn. v. Rogers*, (Tex.) 163 S. W. 421; *Clarke v. Illinois, etc., Assn.*, 180 Ill. App. 300.

This matter, as to plaintiff's knowledge of his blindness, will be referred to later, in so far as it appears to be necessary to discuss it, and in connection with the question of the limitation provided for in the contract and the statute, which we regard as the controlling point in the case.

It is also contended by appellant that no proofs of loss were furnished, and that a waiver as to furnishing the proofs of loss was not pleaded, and that, therefore, for this reason alone, there should have been a directed verdict for the defendant. Appellee states in argument that he never furnished any proofs to the defendant, and concedes that no waiver of proofs was pleaded by either party. Appellant concedes the two foregoing propositions in substantially the same language used by appellee. We apprehend that this argument is made by plaintiff to escape the argument as to the matter of the limitation provided in the certificate and statute, because they say that the difficulty of the case rests in the fact that we have no definite time at which the 40 days provided by statute begins to run, because, as they say, plaintiff never furnished any proofs of loss to the defendant, but the fault for this was on defendant, for the reason that it failed to furnish blanks. In other words,

appellee's purpose seems to be, by the argument that there
were no proofs of loss or waiver, to extend the time so as
to prevent the bar of the limitation.   Appellant, though
conceding at one point that there were no proofs, yet con-
tends that, if there were any proofs at all, it was the
notice or letter from plaintiff of February 18, 1914, re-
ceived by the company February 24, 1914.   The company
seems to have treated this letter and the affidavit of Dr.
Thomas as proofs of loss, and, as we understand it, the trial
court so held as matter of law.   And the appellant con-
tends that plaintiff's cause of action accrued when the de-
fendant, on the same day, February 24th, denied all lia-
bility.   Appellant's contention as to the bar of limitation
is that plaintiff's cause of action accrued upon such denial
of liability, and that action would have to be brought with-
in one year from that date, or at least within 40 days
thereafter, under Section 1744 of the Code.   *Kenny v. Bank-
er's Accident Ins. Co.*, 136 Iowa 140, and other cases are
cited, as holding that this section applies to associations
such as defendant appellant.   If appellant accepted plain-
tiff's letter, and the doctor's affidavit before referred to,
as proofs of loss, and denied liability, plaintiff's cause of
action would have accrued even though no waiver was
pleaded.   In other words, plaintiff could sue when his
cause of action accrued, and then, if defendant pleaded
the failure to give proofs of loss, plaintiff could plead a
waiver, or perhaps could plead a waiver of proofs origin-
ally.   The question is not now strictly one of waiver of
proofs of loss, but rather when plaintiff's cause of
action accrued, and whether it is barred.   It was said
in *Kiisel v. Mutual Res. L. Ins. Co.*, 131 Iowa 54, 55,
that the limitation period does not commence to run
until a cause of action has accrued; that is, until suit
may properly be brought.

5. The right of an insurance associa-
3. INSURANCE: ac-
tions: limita-   tion to limit the time within which an ac-
tions by con-
tract: accrual   tion may be brought is recognized by our
of action.
statutes, if such limitation is not contrary
to the statutory provisions, and if reasonable, but the time
agreed upon will be construed to begin to run when the right
of action accrues (*Read & Traversy v. State Ins. Co.*, 103
Iowa 307; *Kiisel v. Mutual Res. L. Ins. Co.*, supra); and it
is held that, under Section 1744, Supplement to the Code,
1913, 40 days shall elapse after the service of notice and
proof of loss before action may be brought (*Salmon v.
Farm P. M. I. Assn.*, 168 Iowa 521). The statute itself
seems to be plain as to that. Under the statute last cited,
as now in force, the insured was entitled to 60 days after
loss in which to file notice and proof, but the amount due
is not payable under the statute, nor can an action be
begun, until 40 days after such filing; that is, after the no-
tice and proofs are furnished. Under the statute, the in-
sured has 60 days within which to furnish notice and
proofs, but the 40-day period begins to run, not from the
end of the 60 days, as we understand appellee to 'contend,
but from the date on which the notice and proofs are
actually furnished. In other words, in computing the time
within which action must be brought, plaintiff may not
count both the 60 and the 40 days, where, as here, the
notice was given before expiration of 60 days. As bearing
upon this, see *Jones v. German Ins. Co.*, 110 Iowa 75, 80;
*Bradford v. Mutual F. Ins. Co.*, 112 Iowa 495; *Read v. State
Ins. Co.*, supra. It is appellee's contention that the 60 days
allowed, both by statute and by the contract of defendant,
began to run January 12, 1914, at the time plaintiff claims
he first had knowledge that he had lost the sight of his
eye, and would terminate on March 13, 1914, and that the
40 days allowed by statute would begin to run on March
13, 1914, and end April 23, 1914, and he cites a North

Carolina case to sustain his contention. But we have heretofore shown that both the 60 and the 40 days may not be counted in determining the bar of limitation. He also contends that the one year allowed in addition thereto by the statute begins on April 23, 1914, and ends on April 23, 1915, and that, his action having been begun April 21, 1915, he was in time. As already shown, defendant's by-laws provide that no action shall be brought unless the same shall be commenced within 12 months after the cause of action accrues, and the statute provides that the time within which action shall be brought shall not be limited to less than one year from the time when a cause of action accrues. The statute also provides that no action shall be begun within 40 days after notice and proofs of loss have been given to the company. Under the record, defendant denied liability on February 24, 1914, and plaintiff's cause of action accrued 40 days thereafter. It would therefore be barred one year after the expiration of said 40 days, which would be 17 or 18 days before the action was brought. As said, appellee contends that, under the by-laws, which provide that notice should be given the company within 15 days after the date of injury, and not more than 60 days therefrom, he was entitled to 60 days from January 12, 1914, to furnish notice and proofs of loss. But he did give notice and proofs of loss, and the only ones that were given, February 24, 1914, and the company denied liability on that date, and, as said, the 40 days began to run then. It is our conclusion that the plaintiff's action was not brought in time, and that it was barred when brought. Other questions are argued, but the one last referred to is decisive of the case, so that such other points need not be noticed.

For the reasons given, the judgment is *Reversed on defendant's appeal and remanded* for further proceedings

in harmony with the opinion.—*Affirmed on plaintiff's appeal.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.