FARMERS MUTUAL FIRE INSURANCE COMPANY, APPELLANT, v. FRANK E. MEYER, RESPONDENT.—49 S. W. (2d) 270.

Kansas City Court of Appeals. May 2, 1932.

*Collet & Son* for appellant.

*Gilbert Lamb* and *Sasse & Merrill* for respondent.

BLAND, J.—This is a suit, in three counts, seeking to recover assessments made by the plaintiff insurance company on three several

policies of insurance carried in said company by the defendant. The case was tried before the court without the aid of a jury, resulting in a judgment in favor of defendant.

The facts show that plaintiff is a Farmers' Mutual Fire Insurance Company, located in Chariton County. It was incorporated in the year 1895 under article 15, chapter 37, Revised Statutes 1929.

The policies of insurance on which the assessments were levied are exactly alike, except as to dates and amounts. Count One is the only one printed in the abstract. It prays judgment for the assessment made upon a policy issued to defendant on March 22, 1929, in the sum of $16,700. The policy was to run five years and provides that it was issued in consideration of the payment of a certain sum of money, which the evidence shows was a membership fee of two mills on each $100 of insurance, "and the agreement of insured to pay his ratio of losses by fire and lightning, and all assessments made . . . and a full compliance with the by-laws of the company." Plaintiff's constitution was incorporated in the policy and provides that those insured in the company shall remain members "during the term specified in their respective policies and their full compliance with the By-laws of this Company, according to the strict terms thereof." The written application for the policy provided: "I further agree to be governed by the Articles of Incorporation and By-laws now in force or hereafter made by said Company, and to pay all assessments made on me by the Company in accordance with the By-laws."

Section 8 of the By-laws provides as follows:

"It shall be the duty of the executive committee to audit annually, during the last week of September, in each year, the accounts of the Secretary and Treasurer, and at all times keep themselves fully advised of the assets and liabilities of the Company, so that prompt and satisfactory settlement of all claims and expenses can be made and contingent expenses and liabilities of the company provided for, and for this purpose, said executive committee shall have full power and authority to order at any time a special assessment upon all members of the company, which said assessment shall be known and described as special assessment and shall be numbered consecutively, and a full complete record thereof kept, and a full report of said special assessment made during each year and presented to the board of directors at each annual meeting."

Section 9 requires the secretary to give notice to each policy holder of the levy of any special assessments and the amount due from such policy holder. It also provides that it shall be the duty of the policy holder, within thirty days from the giving of the notice, to remit to the secretary the amount due and if payment is not made

within that time the insurance should be suspended and, after sixty days from that date, the policy should be absolutely void.

Section 10 provides as follows:

"All members shall be liable for all assessments made by the executive committee for the payment of losses sustained and expenses accrued while their policies are in force."

Section 25 provides, in part, as follows:

"Any member wishing to withdraw from the company shall notify the secretary in writing of his intention to withdraw, and if there be no loss pending at the time, the withdrawal shall take place within five days, but if there has been a loss previous to receiving such notice *and it is necessary to make an assessment,* his withdrawal shall take place immediately after paying his share of such assessment." (Italics ours.)

The record shows that:

"On October 28, 1930, the committee ordered the secretary to call an assessment of four mills on the dollar on all insurance in force on the first day of November, 1930, up to and including December 31, 1930, notice of assessment to bear date of November 1, 1930, said assessment to be due and payable on the first day of January, 1931."

Pursuant to this order, the secretary on November 1, 1930, mailed to the defendant a notice thereof, reading in part as follows:

"You are hereby notified that by order of the Executive Committee, an assessment of four mills on the $1 is levied on all insurance in force up to and including December 31, 1930, *to pay unpaid losses and expenses. Whatever is left will be used to pay future losses and expenses."* (Italics ours.)

Defendant wholly failed to pay this assessment and his policies were forfeited in due time. This suit was brought to recover the amount of the assessment in question.

The evidence shows that the assessment was made for the purpose of paying losses and expenses that occurred during the calendar year of 1930; that on September 30, 1930, at the annual meeting of the company, it had unpaid losses in the sum of $5,715.79; that from the 30th day of September to the 31st day of October, inclusive, of that year the expenses and losses of the company accruing amounted to $3,982.69. There is nothing in the record to show what were the losses and expenses sustained and accruing to October 28, 1930, the date of the assessment. The evidence shows that on the date of the annual meeting on September 30, 1930, plaintiff had on hand, in cash, the sum of $9,871.01, or enough to pay all of the losses and expenses up to and including October 31, 1930 (three days later than the date of the assessment), and to leave a balance in the treasury of the company in the sum of $172.53.

The evidence further shows that the assessment was calculated to raise the sum of approximately $31,000. Therefore, it would appear that the amount contemplated to be collected by the assessment was approximately $22,000 greater than the amount of the unpaid losses and expenses sustained and accruing to the date of the assessment. The evidence, however, shows that defendant's *pro rata* share of the losses and expenses of the company, for the whole period of time from the issuance of the policies to him to the date of their cancellation, was in excess of the amounts assessed against him, including the last assessment which he did not pay.

It appears that at the time the assessment in question was made the company had on hand funds more than sufficient to pay all of the losses sustained and expenses accrued and, unless there is something in the statute, or the constitution or the by-laws of the plaintiff, authorizing it to collect assessments for the purpose of creating or maintaining a reserve or surplus fund, then unquestionably the assessment was invalid and this suit cannot be maintained. [Johnson v. Hartford Ins. Co., 271 Mo. 562, 575, 576; Ibs v. Hartford Life Ins. Co., 121 Minn. 310; Mut. Windstorm Co. v. Goodrich, 225 Mich. 687, 691; Farmers' Mutual Fire Ins. Co. v. Knight, 162 Ill. 470; Ins. Co. v. Taft, 26 Ind. 240; Commonwealth v. Mass. Ins. Co., 119 Mass. 45; Rosenberger, Light & P. Co. v. Was. Mut. Fire Ins. Co., 87 Pa. 207; Clark v. Ia. St. F. M. Ass'n., 156 Ia. 201; Bradford v. Mut. Fire Ins. Co., 112 Ia. 495.]

However, as we understand plaintiff's contention, there is sufficient in section 8 of its by-laws to provide for a reserve or surplus fund. Plaintiff contends that this section provides: "For the levying of special assessments to take care of unforeseen obligations and to keep the company on a cash or prompt paying basis." If plaintiff is right then there is a serious question as to whether the assessment is not unreasonably large for the purposes contemplated in section 8. However, plaintiff says that the assessment in controversy was not a special assessment under the provisions of section 8 but under the provisions of the policy and section 10 of the by-laws providing that defendant should be liable for the payment of his ratio of the losses by fire and lightning sustained and expenses accrued while his policy was in force, and that the assessment made in this case was a general assessment and not a special assessment.

It would seem that, if plaintiff's contention were well taken, the company, in calling the assessment and giving notice thereof to defendant, should have stated what kind of an assessment this was and, in failing to do so, the assessment is void. [See Settle v. Ins. Co., 150 Mo. App. 520; Craig v. Western Life Ins. Co., 136 Mo. App. 5, 10; Wayland v. Indemnity Co., 166 Mo. App. 221; 26 C. J. 123, 124; 2 Cooley's Briefs on Ins. (2 Ed.) 1599, 1600, 1602, 1702, 1705.] How-

ever, the notice in question, on its face, shows that it was not the kind of an assessment that plaintiff says, for the reason that it recites that it was "to pay unpaid losses and expenses. Whatever is left will be used *to pay future losses and expenses.*" (Italics ours.) It says nothing about paying a ratio of all losses, etc.

If section 8 is to be construed as empowering plaintiff to create a reserve or surplus fund, then we say that it is a dead letter, so far as this company is concerned, as it has never availed itself of the privilege of this section and the surplus in its hands has come about illegally by levying general assessments. We say this because the evidence shows that this company at no time levied more than one assessment per year, called an "annual assessment." Counsel for the plaintiff at the trial stated:

"I am seeking to show how the business of the company is transacted, and in showing that, I will undertake to show that annually, in the fall of the year, after the greater part of the year's business has been transacted, the committee runs an assessment, taking into account the losses and expenses that have already accrued, and approximating or estimating the losses and expenses that will accrue for the remainder of the year, and levies an assessment for that current year. This was what was done at this particular time. The assessment was levied to cover the losses and expenses for that year's business."

Plaintiff's evidence, also, shows that the assessment in question was the only one levied for the year 1930. There is no contention that the company was empowered to create or maintain a reserve or surplus fund by levying general assessments and there is nothing in plaintiff's by-laws to warrant any such action. However, the validity of section 8 of the by-laws is doubtful if it is subject to the construction that plaintiff contends. It is questionable whether a Farmers' Mutual Fire Insurance Company in this State can maintain a reserve or surplus fund without limitation as to the amount and as to the time that the losses are to accrue for which the fund is maintained to pay.

Section 6056, Revised Statutes 1929, providing for the incorporation of Farmers' Mutual Fire Insurance Companies, reads in part, as follows:

"Hereafter all farmers' mutual fire and lightning insurance companies organized in this State for the sole purpose of mutually insuring the property of the members, *and for the purpose of paying any loss incurred by any member thereof by assessment, or for anticipated losses for the year next following the date of the assessment,* as provided by their constitution and by-laws, are hereby exempt from the provisions of this chapter as applicable to general insurance companies." (Italics ours.)

. Under this statute it is doubtful whether a fund can be accumulated for any further purpose than to pay anticipated losses for the year next following the date of the assessment. This statute exempts this class of insurance companies from the restrictions upon general insurance companies because it is run upon a different plan. That plan does not involve the creation of a reserve fund save in the manner and for the purpose provided for in the statute.

This insurance company was incorporated in the year 1895, and the statute prior to 1927 (see Laws 1927, p. 282), did not provide for an assessment for anticipated losses of any kind. There is no evidence that the constitution or the by-laws of the plaintiff have ever been amended since the statute was amended but, however that may be, plaintiff has no law providing for an assessment for anticipated losses for the year next following the date of the assessment and, although, the statute provides that it may pass such a law, such authority does not exist until the plaintiff acts. [Clark v. Ia. St. T. M. Ass'n., supra, 1. c. 206.] It is worthy of note that there was no effort made at the trial to show what the anticipated losses of this company would be for the following year after the date of the assessment. In fact, there is no contention that this assessment was made for the purpose of paying those losses, but solely for the purpose of paying the losses and expenses for the current year for which funds were already available, at least up to the date of the assessment. However, it is unnecessary for us to pass upon what effect the statute has upon the matter for the reason that there is no contention that the assessment in question was to provide a surplus fund. The only surplus fund that legitimately could be created by a general assessment or assessments was one to provide for contingent expenses and to meet losses in collections. As was said in Rosenberger, Light & Co. v. Wash. Mut. Fire Ins. Co., supra, 1. c. 212:

"Assessments must be limited to the objects declared in the charter and by-laws. The managers may exercise a reasonable discretion in fixing the amount to be raised, for the charter must be construed in reference to its practical working. The actual sum required can be ascertained; but as expense must be incurred in the collection and loss be sustained in consequence of insolvency of members, proper allowance may be made for failures likely to result from these and other causes, and if the allowances are reasonable in amount and consistent with good faith on the part of the managers, they will not vitiate the assessment. But if these reasonable limits are disregarded and transcended, purposely or by culpable carelessness, the assessment is illegal and void." [See also Mutual Windstorm Co. v. Goodrich, supra.]

It is well established that the plan of insurance provided for by this class of companies does not contemplate that a member therein shall pay for losses accruing prior to his becoming a member or after his membership ceases. [26 C. J. 118, 120; Settle v. Ins. Co., supra, 1. c. 526.] Our statute prior to 1927 seems to have so provided but in that year the statute was amended so as to permit these companies to make assessments "for anticipated losses for the year next following." The by-laws of plaintiff provide that a member may withdraw at any time if it is unnecessary to make an assessment to pay a pending loss and even then he may withdraw when his assessment for that purpose is paid. To permit plaintiff to levy a general assessment not needed to pay losses sustained or expenses accruing while a member continues to be such, would require him to pay losses occurring after his membership ceases. While defendant would not be unjustly treated in this instance were he required to pay the assessment in question, as thereby he would not be paying more than his share of an amount necessary to meet losses sustained and expenses accruing while he was a member, others who helped to create plaintiff's present surplus and are still members would suffer an injustice were they required to pay their quota of this assessment and there is nothing in the laws of the company or the statute upon which any distinction can be made. From what we have already said it is quite apparent that there is nothing in the by-laws of the plaintiff or the statute authorizing it to levy the assessment in question.

It may appear that there is some apparent injustice in this case, in that defendant has procured insurance by paying a sum much less than its actual cost to the plaintiff. However, that was plaintiff's concern in writing this insurance with its funds and laws in the condition they were, and not the court's. It is quite apparent that plaintiff, in the past years, has been collecting general assessments illegally, thus creating a reserve fund, at the expense of its members, to which it is not entitled. It would appear that if, by reason of this situation, defendant has profited, plaintiff cannot complain without admitting that it has been at fault, itself. We would be wholly unjustified in writing the law so as to permit the continuance of this illegal practice. As was said in Farmers' Fire Ins. Co. v. Knight, supra, 1. c. 481: "These violations of the statute did not ripen into a right."

The judgment is affirmed. All concur.